IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GM CASTING HOUSE INC. | Case No. 1:24-cv-1821 |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| FOREVER COMPANIES, INC., | |
| Defendant. | |

# COMPLAINT

Plaintiff GM Casting House Inc. ("GM" or "Plaintiff") files its complaint against Forever Companies, Inc. d/b/a Diamond Nexus ("Diamond Nexus" or "Defendant") for damages and injunctive relief as follows:

## Subject Matter Jurisdiction and Venue

1. This case is a civil action arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* This Court has subject matter jurisdiction over the claims in this Complaint which relate to federal trade secret misappropriation claims pursuant to 28 U.S.C. § 1331.

2. While the amount in controversy has not yet been quantified, it greatly exceeds $75,000. Accordingly, this Court also has subject-matter jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

3. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 on the grounds that a substantial part of the events or omissions giving rise to this action occurred within this District. Venue is also proper in this Court based upon a Mutual Confidentiality and Non-Solicitation Agreement entered into by the parties on or around August 20, 2015 ("NDA"), which designates the courts of Illinois as proper venue. A copy of the NDA is attached to this Complaint as Exhibit 1.

## Parties and Personal Jurisdiction

5. GM is an Illinois corporation with its principal place of business at 5 South Wabash Avenue, Suite 614, Chicago, IL 60603.

6. GM is informed and believes, and on that basis alleges, that Diamond Nexus is a division of Forever Companies, Inc. (f/k/a Lautrec Corporation), a Wyoming corporation with its principal place of business at 5050 W Ashland Way, Franklin, WI 53132.

7. This Court has personal jurisdiction over Defendant pursuant to the terms of the NDA, in which Defendant consented to the jurisdiction of Illinois courts. *See* NDA ¶ 18. Furthermore, Defendant transacts business and has other related activities within this Judicial District.

## The Business of GM

8. Since its inception in 1987, GM has become a leading jewelry manufacturer and wholesaler that combines cutting-edge technology with premier craftsmanship to provide its customers (namely, jewelry retailers) with the highest quality products.

9. GM offers full-service custom jewelry manufacturing solutions, including computer-aided design (CAD) files, rapid model prototyping, precious metal casting and finishing, to over 2,000 jewelers throughout the United States and internationally. GM also offers a full catalogue line of finished jewelry to its retail customers.

10. In the course of conducting its business, GM has created many proprietary and confidential CAD files (three-dimensional digital models) to design, modify, and produce GM's own innovative jewelry designs (the "Confidential CADs").

11. CAD files allow for visualization, analysis, and adjustment of jewelry designs before fabrication. CAD files are also easily customizable, allowing for modifications and redesigns. However, the development of CAD files for jewelry designs is highly specialized and labor intensive, requiring both a mastery of CAD software and a comprehensive understanding of jewelry design fundamentals.

12. The Confidential CADs were costly to develop, reflecting substantial amounts of GM's time, money, and effort, and each contains proprietary design details, including precision measurements for GM's jewelry designs.

13. The Confidential CADs provide GM with a competitive advantage in its field, which is essential to GM's success in the highly competitive jewelry manufacturing market.

14. GM takes reasonable steps to prevent the disclosure of the Confidential CADs to the public, including but not limited to restricting access to the Confidential CADs, designating the Confidential CADs as confidential, designating the Confidential CADs as trade secrets, and requiring confidentiality and/or nondisclosure agreements.

15. GM derives independent economic value from the fact that the Confidential CADs are not generally known to and not readily ascertainable through proper means by other persons who can obtain economic value from its disclosure.

**Defendant's Unlawful Activities**

16. GM is informed and believes, and on that basis alleges, that Diamond Nexus is a jewelry retailer in the business of marketing and selling jewelry.

17. From 2015 until around September 2023, Diamond Nexus was a

customer of GM.

18. As GM's customer, GM designed and manufactured numerous different jewelry pieces for Diamond Nexus to market and sell.

19. Most of the jewelry pieces GM provided to Diamond Nexus were based on the Confidential CADs that are the exclusive property of GM, including GM's Style Nos. R1001 ("Dubai"), R1002 ("Pamplona"), R1003 ("Naples"), R1004 ("Berlin"), R1006 ("Budapest"), R1009 ("Athens"), R1016 ("Verona"), R1021 ("Montreal"), R1027 ("Five Stone Classic"), R1041 ("Rome"), R1042 ("Sedona Classic"), R1043 ("Sedona Accented"), R1068 ("Sestina"), R1089 ("Fiji"), R1099 ("Bali Classic"), R1108 ("Three Stone Halo"), R1117 ("Versailles"), R1126 ("Three Stone Accented Round Ring"), R1128 ("Santorini"), R1141 ("Tahiti Split Band"), R1148 ("Bali Accented"), R1166 ("Prague"), R1167 ("Accented 4-Prong"), R1171 ("Rhodes"), R1181 ("Nouveau"), R1186 ("Ivy"), R1198 ("Edelweiss"), R1240 ("Vienna"), R1241 ("Lotus"), W1000 ("Manhattan Petite MB"), W1003 ("San Francisco MB"), W1004 ("Miami MB"), W1022 ("Fiji WB"), W1035 ("Rome WB"), W1036 ("Bali Classic Wedding Band Mounting"), W1037 ("Versailles Wedding Band"), W1038 ("Santorini Wedding Band"), W1045 ("Prague Wedding Band"), W1047 ("Rhodes Wedding Band"), and W1084 ("Shared Prong Wedding Band") (collectively, "GM Jewelry").

20. As part of their ongoing business relationship, the parties executed the NDA. *See* Ex. 1.

21. The NDA provides: "Without the prior written consent of the Disclosing Party, the Recipient Party will not at any time use for its own benefit or purposes or for the benefit or purposes of any other person, corporation or business organization, entity or enterprise, or disclose in any manner to any person, corporation or business organization, entity or enterprise . . . information, whether in written, documentary, graphic, oral, electronic, computer readable or any other

4

form whatsoever, relating to ***any trade secret, information, data, know-how or knowledge***, financial information, marketing information, lists of customers and potential customers, special needs of customers, sales methods, price lists, pricing information, research, vendor information, ***product information***, purchasing information, cost information, business contracts, records, draft documents, draft correspondence, correspondence, policy manuals, ***inventions, secret processes, systems of manufacture***, discoveries, ***drawings***, data sheets, process conditions, plans, methods of doing business, strategies, methods of operation, product formulations, promotions, promotional tie-ins, new product introductions, marketing plans, product concepts; videotapes, audio cassettes, diskettes, software, confidential or proprietary third party information, information on new products and services being researched or developed by Disclosing Party, or the presentation, features, performance, utility or functionality of the same." *Id* ¶ 2 (emphasis added).

22. The NDA further provides: "The Recipient Party acknowledges that all Confidential Information shall remain the property of Disclosing Party, and the Recipient Party agrees . . . except as specifically permitted hereunder or as specifically consented to in writing by Disclosing Party, ***not to directly or indirectly disclose, transfer, exploit, copy, modify, or otherwise reproduce*** any Confidential Information at any time during or after the period of relationship between the parties." *Id. ¶* 3 (emphasis added).

23. The NDA further provides: "The parties' respective obligations under this Agreement and rights with respect thereto will survive any termination of the parties' relationship indefinitely. Upon the earlier of receipt of a written request from Disclosing Party, for any reason, or the termination of the particular business purpose for which the Confidential Information was disclosed, Recipient Party shall return to Disclosing Party any and all Confidential Information it received from the Disclosing Party or at the Recipient Party's option, destroy such Confidential

Information. ***Any notes or work product developed or otherwise derived from the Confidential Information by the Recipient Party and which constitute Confidential Information, shall be destroyed by the Recipient Party*** and not returned to the Disclosing Party." *Id. ¶* 9 (emphasis added).

24. Throughout the course of the parties' business relationship, GM disclosed many Confidential CADs to Diamond Nexus for the limited purpose of Diamond Nexus creating advertising and marketing materials for GM Jewelry.

25. GM's disclosures of the Confidential CADs to Diamond Nexus were made pursuant to the NDA, and Diamond Nexus understood the confidential nature of the disclosures and that such disclosures had been made pursuant to the NDA.

26. GM is informed and believes, and on that basis alleges, that Diamond Nexus has advertised and marketed GM Jewelry using images derived from the Confidential CADs, including through Diamond Nexus's website available at diamondnexus.com.

27. In or around September 2023, due to Diamond Nexus's continual nonpayment for goods and services, the parties' business relationship was terminated.

28. Despite the termination of the parties' business relationship, Diamond Nexus continued to advertise GM Jewelry on its website.

29. In October 2023, GM requested that Diamond Nexus remove from its website all listings of GM Jewelry. Diamond Nexus confirmed that it would remove all listings of GM Jewelry by October 31, 2023. Despite this promise, Diamond Nexus continued to advertise GM Jewelry on its website after October 31, 2023.

30. GM is informed and believes, and on that basis alleges, that Diamond Nexus continued to sell GM Jewelry through its website after October 31, 2023.

31. On multiple occasions in November 2023, GM again requested that Diamond Nexus remove from its website all listings of GM Jewelry. Diamond Nexus confirmed that it would remove all listings of GM Jewelry by December 1, 2023. Despite this promise, Diamond Nexus continues to advertise GM Jewelry on its website.

32. GM is informed and believes, and on that basis alleges, that Diamond Nexus continues to sell GM Jewelry through its website. Screen captures showing Diamond Nexus's listings of GM Jewelry on its website are attached as Exhibit 2.

33. GM is informed and believes, and on that basis alleges, that Diamond Nexus could not have continued to sell GM Jewelry through its website without improper use and/or disclosure of the Confidential CADS.

34. GM is informed and believes, and on that basis alleges, that Diamond Nexus has improperly used the Confidential CADs in its business to continue to advertise and sell GM Jewelry.

35. GM is informed and believes, and on that basis alleges, that Diamond Nexus disclosed the Confidential CADs to a third-party jewelry manufacturer in order to have that manufacturer supply GM Jewelry to Diamond Nexus, without the knowledge or consent of GM.

## First Cause of Action
### (Trade Secret Misappropriation under the Federal Defend Trade Secrets Act)

36. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

37. GM is the owner of certain valuable trade secrets contained in and relating to the Confidential CADs.

38. GM's trade secrets contained in and relating to the Confidential CADs are used in or intended for use in interstate or foreign commerce.

39. GM derives substantial, independent economic value from the Confidential CADs not being generally known to the public or to GM's competitors, who could obtain substantial economic value from the information.

40. GM expended substantial financial and human resources to develop the Confidential CADs, which cannot be easily acquired or replicated by others.

41. GM has undertaken substantial efforts to maintain the secrecy of the Confidential CADs.

42. Accordingly, the Confidential CADs constitute trade secrets pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

43. GM is informed and believes, and on that basis alleges, that Defendant has improperly used and/or disclosed the Confidential CADs without authorization and has thus misappropriated GM's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839(5).

44. Defendant's misappropriation of the Confidential CADs has damaged GM because it has destroyed the value of this information and diminished the competitive advantage that such information gives to GM. In addition, Defendant's conduct has resulted in the diversion of substantial business from GM.

45. Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs.

46. Unless restrained and enjoined, Diamond Nexus will continue to use, divulge, and otherwise misappropriate the Confidential CADs.

47. As a direct and proximate result of Diamond Nexus's misappropriation of the Confidential CADs, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which cannot now be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to 18 U.S.C. §§ 1836(b)(3)(A)-(B), GM is entitled to damages and injunctive relief, including but not limited to disgorgement

of all improperly gained profits attributable to Diamond Nexus's misappropriation.

48. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover exemplary damages of 2 times its damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

49. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**Second Cause of Action**
**(Trade Secret Misappropriation**
**under the Illinois Trade Secrets Act)**

50. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

51. GM is the owner of certain valuable trade secrets contained in and relating to the Confidential CADs.

52. GM derives substantial, independent economic value from the Confidential CADs not being generally known to the public or to GM's competitors, who could obtain substantial economic value from the information.

53. GM expended substantial financial and human resources to develop the Confidential CADs, which cannot be easily acquired or replicated by others.

54. GM has undertaken substantial efforts to maintain the secrecy of the Confidential CADs.

55. Accordingly, the Confidential CADs constitute trade secrets pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/2(d).

56. GM is informed and believes, and on that basis alleges, that Defendant has improperly used and/or disclosed the Confidential CADs without authorization

and has thus misappropriated GM's trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/2(b).

57. GM is informed and believes, and on that basis alleges, that Diamond Nexus has improperly used the Confidential CADs in its business to continue to advertise and sell GM Jewelry.

58. Defendant's misappropriation of the Confidential CADs has damaged GM because it has destroyed the value of this information and diminished the competitive advantage that such information gives to GM. In addition, Defendant's conduct has resulted in the diversion of substantial business from GM.

59. Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs.

60. Unless restrained and enjoined, Diamond Nexus will continue to use, divulge, and otherwise misappropriate the Confidential CADs.

61. As a direct and proximate result of Diamond Nexus's misappropriation of the Confidential CADs, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which cannot now be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to 765 ILCS 1065/3-4 GM is entitled to damages and injunctive relief, including but not limited to disgorgement of all improperly gained profits attributable to Diamond Nexus's misappropriation.

62. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover exemplary damages of 2 times its damages pursuant to 765 ILCS 1065/4(b).

63. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover its reasonable attorneys' fees pursuant to 765 ILCS 1065/5.

## Third Cause of Action
### (Breach of Contract)

64. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

65. In 2015, GM and Diamond Nexus entered into the NDA.

66. GM has fulfilled all obligations and taken all actions required of it pursuant to the terms of the NDA.

67. Pursuant to the NDA, Diamond Nexus agreed to neither use nor disclose any confidential or trade secret information of GM, including the Confidential CADs.

68. Diamond Nexus has breached the terms of the NDA by continuing to use images derived from the Confidential CADs to continue to advertise GM Jewelry on Diamond Nexus's website after the termination of the parties' business relationship.

69. GM is informed and believes, and on that basis alleges, that Diamond Nexus has also breached the terms of the NDA by using and/or disclosing the Confidential CADs to continue to manufacture and sell GM Jewelry.

70. Defendant's misappropriation of the Confidential CADs will destroy the value of this information and diminish the competitive advantage that such information gives to GM. In addition, Defendant's conduct will result in the diversion of substantial business from GM.

71. Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs and, unless restrained and enjoined, Defendant will continue to use, divulge, and otherwise misappropriate the

Confidential CADs.

72. As a direct and proximate result of Diamond Nexus's breach of the NDA, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which cannot now be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to Paragraph 6 of the NDA, GM is entitled to damages and injunctive relief, including but not limited to disgorgement of all improperly gained profits attributable to Diamond Nexus's breach of contract and specific performance of the contract.

## Request for Relief

Therefore, GM respectfully requests judgment as follows:

1. That the Court find that Defendant has violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, violated the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, and breached the NDA;

2. That Defendant be required to compensate GM for all damages, including actual loss and any unjust enrichment proximately caused by Diamond Nexus's breach of contract;

3. That Defendant be required to compensate GM for all damages, including actual loss and any unjust enrichment proximately caused by Diamond Nexus's misappropriation of GM's trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I)-(II) and 765 ILCS 1065/4(a);

4. That the Court issue a Preliminary Injunction and Permanent Injunction, including pursuant to 18 U.S.C. § 1836(b)(3)(A), 765 ILCS 1065/3, and Paragraph 6 of the NDA, as follows:

>   (i) prohibiting Defendant, and all those acting in concert with it, from using, transmitting, or otherwise disclosing, directly or indirectly, trade secret and proprietary business information

          contained in the records or files of GM, whether in the form of hard copy or information stored electronically on a computer hard drive, disk, USB thumb drive or other storage device, or in a cloud based server or similar file management system, including but not limited to the Confidential CADs;

(ii)    directing the Defendant, and all those in concert with it, to immediately return to GM all of GM's information, data, records and documents, including the Confidential CADs, and all copies, derivations and products thereof, in the possession, custody or control of Defendant or of any person or entity acting in concert or participating with it; and

(iii)    prohibiting Defendant, and all those acting in concert with it, from destroying or altering any information, data, records or documents, including copies, products and derivations thereof, related to the facts at issue in this case.

5.    That the Court find that Defendant's misappropriation of GM's trade secrets was willful and malicious, and require Defendant to pay exemplary damages of 2 times the amount of GM's damages under 18 U.S.C. § 1836(b)(3)(C) and 765 ILCS 1065/4;

6.    That the Court find that Defendant's misappropriation of GM's trade secrets was willful and malicious, and require Defendant to pay GM's reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) and 765 ILCS 1065/5; and

7.    That GM be awarded such other relief as may be appropriate.

DATED: March 4, 2024          Tucker Ellis LLP

By: */s/Nathan T. Newman*
Nathan T. Newman
Howard A. Kroll
233 South Wacker Drive
Suite 6950
Chicago, IL 60606-6395
Telephone: 312.624.6303
Facsimile: 312.624.6309
nathan.newman@tuckerellis.com
howard.kroll@tuckerellis.com

Attorneys for Plaintiff
GM CASTING HOUSE INC.,

## DEMAND FOR TRIAL BY JURY

Plaintiff GM Casting House, Inc. hereby demands a trial by jury to decide all issues so triable in this case.

DATED: March 4, 2024      Tucker Ellis LLP

By: */s/Nathan T. Newman*
Nathan T. Newman
Howard A. Kroll
233 South Wacker Drive
Suite 6950
Chicago, IL 60606-6395
Telephone: 312.624.6303
Facsimile: 312.624.6309
nathan.newman@tuckerellis.com
howard.kroll@tuckerellis.com

Attorneys for Plaintiff
GM CASTING HOUSE INC.,

15