**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GM CASTING HOUSE INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-cv-1821 |
| | ) | |
| FOREVER COMPANIES, INC., | ) | Jury Trial Demanded |
| | ) | |
| Defendant | ) | |

**DEFENDANT FOREVER COMPANIES, INC.'S ANSWER
TO PLAINTIFF'S COMPLAINT**

Defendant Forever Companies, Inc. ("Forever" or "Defendant"), through its counsel Goldberg Segalla LLP, states as follows for its Answer to Plaintiff GM Casting House Inc.'s ("GM" or "Plaintiff") Complaint:

**Subject Matter Jurisdiction and Venue**

1. This case is a civil action arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. This Court has subject matter jurisdiction over the claims in this Complaint which relate to federal trade secret misappropriation claims pursuant to 28 U.S.C. § 1331.

**ANSWER: The allegations of paragraph 1 call for legal conclusions, to which no answer is required.**

2. While the amount in controversy has not yet been quantified, it greatly exceeds $75,000. Accordingly, this Court also has subject-matter jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

**ANSWER: Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 2 and neither admit nor deny same and demand strict**

40713712.v1

**proof thereof. Further answering, the remaining allegations of paragraph 2 call for legal conclusions, to which no answer is required.**

3. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**ANSWER: The allegations of paragraph 3 call for legal conclusions, to which no answer is required.**

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 on the grounds that a substantial part of the events or omissions giving rise to this action occurred within this District. Venue is also proper in this Court based upon a Mutual Confidentiality and Non-Solicitation Agreement entered into by the parties on or around August 20, 2015 ("NDA"), which designates the courts of Illinois as proper venue. A copy of the NDA is attached to this Complaint as Exhibit 1.

**ANSWER: The allegations of paragraph 4 call for legal conclusions, to which no answer is required. Further answering, the NDA is a legal document that speaks for itself.**

<u>**Parties and Personal Jurisdiction**</u>

5. GM is an Illinois corporation with its principal place of business at 5 South Wabash Avenue, Suite 614, Chicago, IL 60603.

**ANSWER: Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 5 and neither admit nor deny same and demand strict proof thereof.**

2

6.      GM is informed and believes, and on that basis alleges, that Diamond Nexus is a division of Forever Companies, Inc. (f/k/a Lautrec Corporation), a Wyoming corporation with its principal place of business at 5050 W Ashland Way, Franklin, WI 53132.

**ANSWER:      Defendant admits the allegations of paragraph 6.**

7.      This Court has personal jurisdiction over Defendant pursuant to the terms of the NDA, in which Defendant consented to the jurisdiction of Illinois courts. *See* NDA ¶ 18. Furthermore, Defendant transacts business and has other related activities within this Judicial District.

**ANSWER:      Defendant admits that it transacts business and has other related activities within this Judicial District. Further answering, the remaining allegations of paragraph 7 call for legal conclusions, to which no answer is required. Further answering, the NDA is a legal document that speaks for itself.**

<b>The Business of GM</b>

8.      Since its inception in 1987, GM has become a leading jewelry manufacturer and wholesaler that combines cutting-edge technology with premier craftsmanship to provide its customers (namely, jewelry retailers) with the highest quality products.

**ANSWER:      Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 8 and neither admit nor deny same and demand strict proof thereof.**

9.      GM offers full-service custom jewelry manufacturing solutions, including computer-aided design (CAD) files, rapid model prototyping, precious metal casting and finishing, to over 2,000 jewelers throughout the United States and internationally. GM also offers a full catalogue line of finished jewelry to its retail customers.

40713712.v1

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 9 and neither admit nor deny same and demand strict proof thereof.**

10. In the course of conducting its business, GM has created many proprietary and confidential CAD files (three-dimensional digital models) to design, modify, and produce GM's own innovative jewelry designs (the "Confidential CADs").

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 10 and neither admit nor deny same and demand strict proof thereof.**

11. CAD files allow for visualization, analysis, and adjustment of jewelry designs before fabrication. CAD files are also easily customizable, allowing for modifications and redesigns. However, the development of CAD files for jewelry designs is highly specialized and labor intensive, requiring both a master of CAD software and a comprehensive understanding of jewelry design fundamentals.

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 11 and neither admit nor deny same and demand strict proof thereof.**

12. The Confidential CADs were costly to develop, reflecting substantial amounts of GM's time, money, and effort, and each contains proprietary design details, including precision measurements for GM's jewelry designs.

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 12 and neither admit nor deny same and demand strict proof thereof.**

40713712.v1

13.     The Confidential CADs provide GM with a competitive advantage in its field, which is essential to GM's success in the highly competitive jewelry manufacturing market.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 13 and neither admit nor deny same and demand strict proof thereof.**

14.     GM takes reasonable steps to prevent the disclosure of the Confidential CADs to the public, including but not limited to restricting access to the Confidential CADs, designating the Confidential CADs as confidential, designating the Confidential CADs as trade secrets, and requiring confidentiality and/or nondisclosure agreements.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 14 and neither admits nor denies the same and demands strict proof thereof.**

15.     GM derives independent economic value from the fact that the Confidential CADs are not generally known to and not readily ascertainable through proper means by other persons who can obtain economic value from its disclosure.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 15 and neither admits nor denies the same and demands strict proof thereof.**

<strong>Defendant's Unlawful Activities</strong>

16.     GM is informed and believes, and on that basis alleges, that Diamond Nexus is a jewelry retailer in the business of marketing and selling jewelry.

**ANSWER:     Defendant admits the allegations of paragraph 16.**

17.     From 2015 until around September 2023, Diamond Nexus was a customer of GM.

5

**ANSWER:** **Defendant admits that it was a customer of Plaintiff.**

18.    As GM's customer, GM designed and manufactured numerous different jewelry pieces for Diamond Nexus to market and sell.

**ANSWER:** **Defendant admits the allegations of paragraph 18.**

19.    Most of the jewelry pieces GM provided to Diamond Nexus were based on the Confidential CADs that are the exclusive property of GM, including GM's Dtle Nos. R1001 ("Dubai"), R1002 ("Pamplona"), R1003 ("Naples"), R1004 ("Berlin"), R1006 ("Budapest"), R1009 ("Athens"), R1016 ("Verona"), R1021 ("Montreal"), R1027 ("Five Stone Classic"), R1041 ("Rome"), R1042 ("Sedona Classic"), R1043 ("Sedona Accented"), R1068 ("Sestina"), R1089 ("Fiji"), R1099 ("Bali Classic"), R1108 ("Three Stone Halo"), R1117 ("Versailles"), R1126 ("Three Stone Accented Round Ring"), R1128 ("Santorini"), R1141 ("Tahiti Split Band"), R1148 ("Bali Accented"), R1166 ("Prague"), R1167 ("Accented 4-Prong"), R1171 ("Rhodes"), R1181 ("Nouveau"), R1186 ("Ivy"), R1198 ("Edelweiss"), R1240 ("Vienna"), R1241 ("Lotus"), W1000 ("Manhattan Petite MB"), W1003 ("San Francisco MB"), W1004 ("Miami MB"), W1002 ("Fiji WB"), W1035 ("Rome WB"), W1036 ("Bali Classic Wedding Band Mounting"), W1037 ("Versailles Wedding Band"), W1038 ("Santorini Wedding Band"), W1045 ("Prague Wedding Band"), W1047 ("Rhodes Wedding Band"), and W1084 ("Shared Prong Wedding Band") (collectively, "GM Jewelry").

**ANSWER:** **Defendant admits that Plaintiff provided Defendant with the GM Jewelry but denies that all of the jewelry designs identified in paragraph 19 are confidential or the exclusive property of GM.**

20.    As part of their ongoing business relationship, the parties executed the NDA. *See* Ex. 1.

6

40713712.v1

**ANSWER:** **The NDA is a legal document that speaks for itself.**

21. The NDA provides: "Without the prior written consent of the Disclosing Party, the Recipient Party will not at any time use for its own benefit or purposes or for the benefit or purposes of any other person, corporation or business organization, entity or enterprise, or disclose in any manner to any person, corporation or business organization, entity or enterprise . . . information, whether in written, documentary, graphic, oral, electronic, computer readable or any other form whatsoever, relating to any ***trade secret, information, data, know-how or knowledge***, financial information, marketing information, lists of customers and potential customers, special needs of customers, sales methods, price lists, pricing information, research, vendor information, ***product information***, purchasing information, cost information, business contracts, records, draft documents, draft correspondence, correspondence, policy manuals, ***inventions, secret processes, systems of manufacture***, discoveries, ***drawings***, data sheets, process conditions, plans, methods of doing business, strategies, methods of operation, product formulations, promotions, promotional tie-ins, new product introductions, marketing plans, product concepts; videotapes, audio cassettes, diskettes, software, confidential or proprietary third party information, information on new products and services being researched or developed by Disclosing Party, or the presentation, features, performance, utility or functionality of the same." *Id* ¶ 2(emphasis added by Plaintiff).

**ANSWER:** **The NDA is a legal document that speaks for itself.**

22. The NDA further provides: "The Recipient Party acknowledges that all Confidential Information shall remain the property of Disclosing Party, and the Recipient Party agrees . . . except as specifically permitted hereunder or as specifically consented to in writing by Disclosing Party, ***not to directly or indirectly disclose, transfer, exploit, copy, modify, or***

7

40713712.v1

*otherwise reproduce* any Confidential Information at any time during or after the period of relationship between the parties." Id. ¶ 3 (emphasis added by Plaintiff).

**ANSWER:** **The NDA is a legal document that speaks for itself.**

23. The NDA further provides: "The parties' respective obligations under this Agreement and rights with respect thereto will survive any termination of the parties' relationship indefinitely. Upon the earlier of receipt of a written request from Disclosing Party, for any reason, or the termination of the particular business purpose for which the Confidential Information was disclosed, Recipient Party shall return to Disclosing Party any and all Confidential Information it received from the Disclosing Party or at the Recipient Party's option, destroy such Confidential Information. *Any notes or work product developed or otherwise derived from the Confidential Information by the Recipient Party and which constitute Confidential Information, shall be destroyed by the Recipient Party* and not returned to the Disclosing Party." Id. ¶ 9 (emphasis added by Plaintiff).

**ANSWER:** **The NDA is a legal document that speaks for itself.**

24. Throughout the course of the parties' business relationship, GM disclosed many Confidential CADs to Diamond Nexus for the limited purpose of Diamond Nexus creating advertising and marketing materials for GM Jewelry.

**ANSWER:** **Defendant admits that it created advertising and marketing materials for GM Jewelry, but lacks sufficient knowledge or information as to what CADs are referred to in paragraph 24 to admit or deny the remaining allegations of paragraph 24 and therefore neither admits nor denies the same and demands strict proof thereof.**

40713712.v1

25.    GM's disclosures of the Confidential CADs to Diamond Nexus were made pursuant to the NDA, and Diamond Nexus understood the confidential nature of the disclosures and that such disclosures had been made pursuant to the NDA.

**ANSWER:    The NDA is a legal document that speaks for itself. Further answering, Defendant lacks sufficient knowledge or information as to what CADs are referred to in paragraph 25 to admit or deny the remaining allegations of paragraph 25 as to the CADs allegedly disclosed and therefore neither admits nor denies the same and demands strict proof thereof.  Defendant denies the remaining allegations of paragraph 25.**

26.    GM is informed and believes, and on that basis alleges, that Diamond Nexus has advertised and marketed GM Jewelry using images derived from the Confidential CADs, including through Diamond Nexus's website available at diamondnexus.com.

**ANSWER:    Defendant admits that Diamond Nexus advertised and marketed GM Jewelry on its website using images from some of GM's CADs.  Defendant lacks sufficient knowledge or information as to what CADs are referred to in paragraph 26 to admit or deny the remaining allegations of paragraph 26 as to the CADs allegedly disclosed and therefore neither admits nor denies the same and demands strict proof thereof.  the Confidential CADs until December 7, 2023.**

27.    In or around September 2023, due to Diamond Nexus's continual nonpayment for goods and services, the parties' business relationship was terminated.

**ANSWER:    Defendant admits only that GM terminated the parties' business relationship, but lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 27 and neither admits nor denies the same and demands strict proof thereof.**

9

28.     Despite the termination of the parties' business relationship, Diamond Nexus continued to advertise GM Jewelry on its website.

**ANSWER:     Defendant admits only that it advertised certain GM Jewelry on its website until December 7, 2023.**

29.     In October 2023, GM requested that Diamond Nexus remove from its website all listings of GM Jewelry. Diamond Nexus confirmed that it would remove all listings of GM Jewelry by October 31, 2023. Despite this promise, Diamond Nexus continued to advertise GM Jewelry on its website after October 31, 2023.

**ANSWER:     Defendant admits only that it advertised certain GM Jewelry on its website until December 7, 2023.**

30.     GM is informed and believes, and on that basis alleges, that Diamond Nexus continued to sell GM Jewelry through its website after October 31, 2023.

**ANSWER:     Defendant admits only that it advertised certain GM Jewelry on its website until December 7, 2023.**

31.     On multiple occasions in November 2023, GM again requested that Diamond Nexus remove from its website all listings of GM Jewelry. Diamond Nexus confirmed that it would remove all listings of GM Jewelry by December 1, 2023. Despite this promise, Diamond Nexus continues to advertise GM Jewelry on its website.

**ANSWER:     Defendant admits that Diamond Nexus confirmed that it would remove listings of GM Jewelry by December 1, 2023 and removed the listings on December 7, 2023. Further answering, Defendant denies the allegation that it continues to advertise GM Jewelry on its website.**

10

32. GM is informed and believes, and on that basis alleges, that Diamond Nexus continues to sell GM Jewelry through its website. Screen captures showing Diamond Nexus's listings of GM Jewelry on its website are attached as Exhibit 2.

**ANSWER:     Defendant denies the allegations of paragraph 32.**

33. GM is informed and believes, and on that basis alleges, that Diamond Nexus could not have continued to sell GM Jewelry through its website without improper use and/or disclosure of the Confidential CADs.

**ANSWER:     The allegations of paragraph 33 call for legal conclusions, to which no answer is required.**

34. GM is informed and believes, and on that basis alleges, that Diamond Nexus has improperly used the Confidential CADs in its business to continue to advertise and sell GM Jewelry.

**ANSWER:     Defendant denies the allegations of paragraph 34.**

35. GM is informed and believes, and on that basis alleges, that Diamond Nexus disclosed the Confidential CADs to a third-party jewelry manufacturer in order to have that manufacturer supply GM Jewelry to Diamond Nexus, without the knowledge or consent of GM.

**ANSWER:     Defendant denies the allegations of paragraph 35.**

**First Cause of Action**
**(Trade Secret Misappropriation**
**under the Federal Defend Trade Secrets Act)**

36. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

**ANSWER:     Defendant reincorporates its Answers to paragraphs 1 through 35 as paragraph 36 as though fully set forth fully herein.**

11

40713712.v1

37.     GM is the owner of certain valuable trade secrets contained in and relating to the Confidential CADs.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 37 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 37 call for legal conclusions, to which no answer is required.**

38.     GM's trade secrets contained in and relating to the Confidential CADs are used in or intended for use in interstate or foreign commerce.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 38 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 38 call for legal conclusions, to which no answer is required.**

39.     GM derives substantial, independent economic value from the Confidential CADs not being generally known to the public or to GM's competitors, who could obtain substantial economic value from the information.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 39 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 39 call for legal conclusions, to which no answer is required.**

40.     GM expended substantial financial and human resources to develop the Confidential CADs, which cannot be easily acquired or replicated by others.

40713712.v1

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 40 and neither admits nor denies the same and demands strict proof thereof.**

41. GM has undertaken substantial efforts to maintain the secrecy of the Confidential CADs.

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 41 and neither admits nor denies the same and demands strict proof thereof.**

42. Accordingly, the Confidential CADs constitute trade secrets pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

**ANSWER:** **The allegations of paragraph 42 call for legal conclusions to which no answer is required.**

43. GM is informed and believes, and on that basis alleges, that Defendant has improperly used and/or disclosed the Confidential CADs without authorization and has thus misappropriated GM's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839(5).

**ANSWER:** **The allegations of paragraph 43 call for legal conclusions to which no answer is required.**

44. Defendant's misappropriation of the Confidential CADs has damaged GM because it has destroyed the value of this information and diminished the competitive advantage that such information gives to GM. In addition, Defendant's conduct has resulted in the diversion of substantial business from GM.

40713712.v1

**ANSWER:** **The allegations of paragraph 44 call for legal conclusions to which no answer is required.**

45. Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs.

**ANSWER:** **The allegations of paragraph 45 call for legal conclusions to which no answer is required.**

46. Unless restrained and enjoined, Diamond Nexus will continue to use, divulge, and otherwise misappropriate the Confidential CADs.

**ANSWER:** **Defendant denies the allegations of paragraph 46.**

47. As a direct and proximate result of Diamond Nexus's misappropriation of the Confidential CADs, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which cannot now be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to 18 U.S.C. §§ 1836(b)(3)(A)-(B), GM is entitled to damages and injunctive relief, including but not limited to disgorgement of all improperly gained profits attributable to Diamond Nexus's misappropriation.

**ANSWER:** **The allegations of paragraph 47 call for legal conclusions to which no answer is required.**

48. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover exemplary damages of 2 times its damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

**ANSWER:** **The allegations of paragraph 48 call for legal conclusions to which no answer is required.**

14

49. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover its reasonable attorneys' fees pursuant to § 1836(b)(3)(D).

**ANSWER: The allegations of paragraph 49 call for legal conclusions to which no answer is required.**

### Second Cause of Action
### (Trade Secret Misappropriation
### under the Illinois Trade Secrets Act)

50. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

**ANSWER: Defendant reincorporates its Answers to paragraphs 1 through 49 as paragraph 50 as though fully set forth fully herein.**

51. GM is the owner of certain valuable trade secrets contained in and relating to the Confidential CADs.

**ANSWER: Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 51 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 51 call for legal conclusions, to which no answer is required.**

52. GM derives substantial, independent economic value from the Confidential CADs not being generally known to the public or to GM's competitors, who could obtain substantial economic value from the information.

**ANSWER: Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 52 and neither admits nor denies the same and demands strict proof thereof.**

15

53.     GM expended substantial financial and human resources to develop the Confidential CADs, which cannot be easily acquired or replicated by others.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 53 and neither admits nor denies the same and demands strict proof thereof.**

54.     GM has undertaken substantial efforts to maintain the secrecy of the Confidential CADs.

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 54 and neither admits nor denies the same and demands strict proof thereof.**

55.     Accordingly, the Confidential CADs constitute trade secrets pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/2(d).

**ANSWER:     Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 55 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 55 call for legal conclusions, to which no answer is required.**

56.     GM is informed and believes, and on that basis alleges, that Defendant has improperly used and/or disclosed the Confidential CADs without authorization and has thus misappropriated GM's trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/2(b).

**ANSWER:     The allegations of paragraph 56 call for legal conclusions, to which no answer is required.**

16

57. GM is informed and believes, and on that basis alleges, that Diamond Nexus has improperly used the Confidential CADs in its business to continue to advertise and sell GM Jewelry.

**ANSWER: Defendant denies the allegations of paragraph 57.**

58. Defendant's misappropriation of the Confidential CADs has damaged GM because it has destroyed the value of this information and diminished the competitive advantage that such information gives to GM. In addition, Defendant's conduct has resulted in the diversion of substantial business from GM.

**ANSWER: Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 58 and neither admits nor denies the same and demands strict proof thereof. Further answering, the remaining allegations of paragraph 58 call for legal conclusions, to which no answer is required.**

59. Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs.

**ANSWER: The allegations of paragraph 59 call for legal conclusions, to which no answer is required.**

60. Unless restrained and enjoined, Diamond Nexus will continue to use, divulge, and otherwise misappropriate the Confidential CADs.

**ANSWER: Defendant denies the allegations of paragraph 60.**

61. As a direct and proximate result of Diamond Nexus's misappropriation of the Confidential CADs, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which cannot now be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to

17

765 ILCS 1065/3-4 GM is entitled to damages and injunctive relief, including but not limited to disgorgement of all improperly gained profits attributable to Diamond Nexus's misappropriation.

**ANSWER: The allegations of paragraph 61 call for legal conclusions, to which no answer is required.**

62. Defendant knew that its use and/or disclosure of the Confidential Ads was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover exemplary damages of 2 times its damages pursuant to 765 ILCS 1065/4(b).

**ANSWER: The allegations of paragraph 62 call for legal conclusions to which no answer is required.**

63. Defendant knew that its use and/or disclosure of the Confidential CADs was illegal, and its misappropriation of those trade secrets has been willful and malicious, entitling GM to recover its reasonable attorneys' fees pursuant to 765 ILCS 1065/5.

**ANSWER: The allegations of paragraph 63 call for legal conclusions to which no answer is required.**

### Third Cause of Action
### (Breach of Contract)

64. Plaintiff realleges and incorporates by reference the allegations of the paragraphs above.

**ANSWER: Defendant reincorporates its Answers to paragraphs 1 through 63 as paragraph 64 as though fully set forth fully herein.**

65. In 2015, GM and Diamond Nexus entered into the NDA.

**ANSWER: The NDA is a legal document that speaks for itself.**

66. GM has fulfilled all obligations and taken all actions required of it pursuant to the terms of the NDA.

18

40713712.v1

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 66 and neither admit nor deny same and demand strict proof thereof.**

67. Pursuant to the NDA, Diamond Nexus agreed to neither use nor disclose any confidential or trade secret information of GM, including the Confidential CADs.

**ANSWER:** **The NDA is a legal document that speaks for itself.**

68. Diamond Nexus has breached the terms of the NDA by continuing to use images derived from the Confidential CADS to continue to advertise GM Jewelry on Diamond Nexus's website after the termination of the parties' business relationship.

**ANSWER:** **Defendant denies the allegations of paragraph 68.**

69. GM is informed and believes, and on that basis alleges, that Diamond Nexus has also breached the terms of the NDA by using and/or disclosing the Confidential CADs to continue to manufacture and sell GM Jewelry.

**ANSWER:** **Defendant denies the allegations of paragraph 69.**

70. Defendant's misappropriation of the Confidential CADs will destroy the value of this information and diminish the competitive advantage that such information gives to GM. In addition, Defendant's conduct will result in the diversion of substantial business from GM.

**ANSWER:** **Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 70 and neither admit nor deny same and demand strict proof thereof. Further answering, the remaining allegations of paragraph 70 call for legal conclusions to which no answer is required.**

40713712.v1

71.     Diamond Nexus has been and will continue to be unjustly enriched by its misappropriation of the Confidential CADs and, unless restrained and enjoined, Defendant will continue to use, divulge, and otherwise misappropriate the Confidential CADs.

**ANSWER:    Defendant denies the allegations of paragraph 71. Further answering, the allegations of paragraph 71 call for legal conclusions to which no answer is required.**

72.     As a direct and proximate result of Diamond Nexus's breach of the NDA, GM has sustained and will continue to sustain substantial pecuniary losses and irreparable injury, the damages from which now cannot be calculated and for which GM's remedy at law is not adequate to compensate for the injuries inflicted. Accordingly, pursuant to Paragraph 6 of the NDA, GM is entitled to damages and injunctive relief, including but not limited to disgorgement of all improperly gained profits attributable to Diamond Nexus's breach of contract and specific performance of the contract.

**ANSWER:    The allegations of paragraph 72 call for legal conclusions to which no answer is required.  Further answering, the NDA is a legal document that speaks for itself.**

<u>**AFFIRMATIVE DEFENSES**</u>

Defendant pleads the following separate affirmative defenses to the Complaint and to the purported causes of action set forth therein:

<u>**FACTS COMMON TO ALL AFFIRMATIVE DEFENSES**</u>

1.     Plaintiff's and Defendant's business relationship first began in 2008.

2.     As of 2015, Plaintiff had CADs directed to designs for 1 size, and 1 carat weight jewelry that were small and generic designs in the industry.

3.     Defendant signed Plaintiff's NDA on August 21, 2015 in order to obtain access to Plaintiff's Halo collection, which was not accessible by other means.

4.     On August 21, 2015, after the NDA was signed, Defendant received the majority

20

40713712.v1

of Plaintiff's CAD files. As the parties' business relationship developed, Plaintiff sent Defendant additional CAD files.

5. The NDA did not specify which files were proprietary, and did not include any attachments apart from the NDA.

6. Plaintiff's CADs were copied from existing, common designs that have been in existence for decades that can be seen in any jewelry storefront.

7. Defendant had a strict policy opposing the use of any designs that appeared to be exclusively owned by another party, and would ask its employees if certain designs were copyrighted before putting the designs on its website.

8. Defendant also had a company policy requiring suppliers to give a statement that designs were protected under intellectual property laws.

9. Upon receipt of Plaintiff's CADs, Defendant would modify the CAD file by: a) adding multiple cuts and shapes to the original CAD images to create a design; b) create a mold; and c) create the required casting to finalize the jewelry design.

10. In other words, Defendant modified Plaintiff's CAD images to create and derive a design unique to Defendant; these designs would then be rendered onto Defendant's website.

11. In order to create these unique CAD renderings and designs, Defendant worked with a company in Estonia to make the patterns in the modified designs more realistic.

12. The parties' business relationship was never exclusive; for example, Defendant worked with a third-party company called Stuller, Inc. ("Stuller"). Stuller is a jewelry company that every company in the jewelry industry works with in order to obtain basic supplies necessary for their business.

13. By 2022, work between the parties had decreased 20-30%.

14. On August 22, 2023, Plaintiff sent Defendant a termination notice stating that Plaintiff was deciding "to go in a different direction"; soon after, Plaintiff sent Defendant correspondence indicating that it wanted to continue the parties' business relationship.

15. In October 2023, Defendant received email correspondence from Plaintiff that

40713712.v1

requested Defendant to take down Plaintiff's CADs from Defendant's website.

16. In response, Defendant requested Plaintiff to provide a list of the proprietary CADs, and whether the CADs were copyrighted.

17. Plaintiff then sent a list of the requested CADs to remove. All CADs to remove from Defendant's website were specifically marked with an "X." The items marked with an "X" were notably designs that were common in the jewelry industry.

18. Defendant not only ceased promotion of the Confidential CADs in October and November 2023, but also recommissioned the designs associated with the Confidential CADs during the middle of Defendant's sales season.

19. During this time, Defendant worked to obtain the same images that Plaintiff originally provided from different companies.

20. As of October/November 2023, the number of designs that Defendant promoted on its website dropped from 985 pieces to around 400 pieces.

21. Due to the wedding of Defendant's Chief Technology Officer, Defendant was unable to remove any of Plaintiff's designs from Defendant's website until the end of November 2023.

22. On December 7, 2023, Defendant removed all designs associated with the proprietary CADs from its website. *See* Sayed Haider's December 7, 2023 Text Message Conversations, annexed hereto as **Defendant's Exhibit 1**.

23. While the designs had been recommissioned and removed from Defendant's website, the names of the designs remained, such as "Dubai" for the now-removed R1001 CAD. Changing the names of the designs would have otherwise resulted in a large loss of sales for Defendant.

24. Defendant's customers noticed the change in the designs; for example, on March 19, 2024, Defendant received correspondence indicating that a customer wanted "the old style in Rose gold"; Defendant declined to provide it to the customer. March 19, 2024 Slack Conversation Between Sayed Haider and Tanya Schwartz, annexed hereto as **Defendant's Exhibit 2**.

40713712.v1

25. Defendant has fully paid its debts to Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1. Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 1 of Defendant's Affirmative Defenses.

2. As a separate and first affirmative defense to the Complaint and to the purported cause of action set forth therein, Defendant alleges that the Complaint fails to state facts sufficient to constitute a cause of action.

3. Counts I through III of the Complaint fail to state claims upon which relief may be granted, at least because Defendant removed the designs associated with Plaintiff's allegedly Confidential CADs on December 7, 2023; stopped promoting and advertising such designs in October and November 2023; and has paid its debt in full to Plaintiff.

4. Further, Defendant does not have a trade secret in its allegedly Confidential CADs, at least because the allegedly Confidential CADs were based on images common within the jewelry industry for several decades and therefore, were known throughout the jewelry industry.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands and/or Bad Faith)

5. Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 5 of Defendant's Affirmative Defenses.

6. As a separate and second affirmative defense to the Complaint and to the purported causes of action set forth therein, Defendant alleges that Plaintiff acted with unclean hands and/or bad faith.

7. In its Complaint, Defendant attempts to bring trade secret misappropriation claims based on allegations of misappropriation of certain information Plaintiff claims was confidential, proprietary, and/or trade secret in its Confidential CADs.

8. However, the Confidential CADs are designs that are widely known and have been used within the jewelry industry for decades.

40713712.v1

9.      Plaintiff's assertion of trade secret misappropriation and other claims based on allegations of trade secret misappropriation and use of the Confidential CADs on Defendant's website from October 2023 to the present, especially when all designs associated with the Confidential CADs were removed from Defendant's website on December 7, 2023, constitutes bad faith and unclean hands by Plaintiff.

10.     Plaintiff's bad faith in bringing trade secret misappropriation claims entitles Defendant to the recovery of its attorneys' fees in defending this action pursuant to 18 U.S.C. § 1836(b)(3)(D), 765 ILCS 1065/5 and/or other applicable law.

11.     Plaintiff is barred, in part or in whole, from recovery of any damages from the Defendant based upon the doctrine of unclean hands.

**THIRD AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

12.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 12 of Defendant's Affirmative Defenses.

13.     As a separate and third affirmative defense to the Complaint, and to the purported cause of action set forth therein, Defendants allege that Plaintiff's claim is barred in whole or in part because any recovery Plaintiff may take by the Complaint constitutes unjust enrichment.

**FOURTH AFFIRMATIVE DEFENSE**

**(Waiver)**

14.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 18 of Defendant's Affirmative Defenses.

15.     As a separate and fourth affirmative defense to the Complaint, and the purported causes of action set forth therein, and based upon such information and belief, Defendant alleges that Plaintiff has engaged in conduct and activity sufficient to constitute a waiver of any right to assert the claims upon which it now seeks relief.

24

40713712.v1

## FIFTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses)

16.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 20 of Defendant's Affirmative Defenses.

17.     Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses, whether at law or equity, that may now exist or in the future be available based on discovery and further factual investigation in this litigation, as a separate and fifth affirmative defense.

## SIXTH AFFIRMATIVE DEFENSE

### (Unreasonable Fees)

18.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 22 of Defendant's Affirmative Defenses.

19.     As a separate and sixth affirmative defense to the Complaint, Plaintiff's recovery is barred, in whole or in part, because the attorneys' fees, costs, and interest pleaded in the Complaint is overstated, unreasonable, and otherwise not allowable.

## SEVENTH AFFIRMATIVE DEFENSE

### (Damages Set-Off)

20.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 24 of Defendant's Affirmative Defenses.

21.     As a separate and seventh affirmative defense to the Complaint, Plaintiff's damages, if any, are set-off by the value and/or benefit Plaintiff obtained due to its own conduct and/or the conduct of others chargeable to it, and any recovery by Plaintiff's should be barred and or reduced according to law, up to and including the whole thereof.

## EIGHT AFFIRMATIVE DEFENSE

### (No Exemplary Damages)

22.     Defendant incorporates paragraphs 1-25 of the Facts Common to All Affirmative Defenses herein as if fully restated in this Paragraph 26 of Defendant's Affirmative Defenses.

40713712.v1

23. As a separate and eighth affirmative defense to the Complaint, there is no legal or factual basis for Casting House's demand for exemplary damages, at least because Defendant removed all the proprietary CADs from its website before this Complaint was filed and has paid its debt in full to Plaintiff.

## CONCLUSION

WHEREFORE, Defendant Forever Companies, Inc. prays for the following relief:

1. Judgment in favor of Forever Companies against GM Casting House on Counts I, II, and III.

2. Judgment that GM Casting House take nothing on its claims.

3. An award to Forever Companies of attorneys' fees, costs, and expenses incurred as a result of this action; and

4. Such further and other legal equitable relief as the Court may deem just and necessary under the circumstances.

Respectfully submitted,

GOLDBERG SEGALLA LLP

By: /s/ *Daniel R. Woods*
Daniel R. Woods
Kenneth A. Matuszewski
222 West Adams Street, Suite 2250
Chicago, IL 60606
Tel: (312) 572-8427
dwoods@goldbergsegalla.com
kmatuszewski@goldbergsegalla.com
Attorneys for Defendant, Forever Companies, Inc.

40713712.v1

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, May 17, 2024, I filed the foregoing Answer to Plaintiff's Complaint through the Court's electronic filing system and thereby served all counsel of record with a copy of the same.

*/s/ Daniel R. Woods*

Attorney for Defendant Forever Companies, Inc.

27