**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GM CASTING HOUSE, INC.,

    Plaintiff,

v.

    CASE NO. 1:24 cv-1821

FOREVER COMPANIES, INC.,

    Defendant.

**PLAINTIFF'S RULE 25(c) MOTION TO JOIN**
**DIAMOND NEXUS, LLC AS JUDGMENT DEBTOR**

Plaintiff GM Casting House, Inc. ("GM"), by and through its counsel, Howard Kroll, Daniel Curth, and Helena Guye of Tucker Ellis LLP, and pursuant to Rule 25(c), Fed. R. Civ. P., respectfully requests entry of an order joining Diamond Nexus, LLC as a named defendant and judgment debtor because it is a successor-in-interest of defendant Forever Companies, Inc. d/b/a Diamond Nexus.

## I.    INTRODUCTION

GM is a jewelry designer and manufacturer that offers full-service custom jewelry manufacturing solutions, including computer-aided design ("CAD") files, to over 2,000 jewelers worldwide, along with a full line of finished jewelry to its retail customers. In 2015, GM entered into a confidentiality and non-solicitation agreement ("NDA") with originally named Defendant, Forever Companies, Inc. d/b/a Diamond Nexus ("FCI"), pursuant to which GM provided FCI with GM's confidential and proprietary CAD files for GM's jewelry designs. This would allow FCI to advertise jewelry derived from those designs on its website, www.diamondnexus.com. FCI breached the NDA and unlawfully misappropriated GM's trade secrets, precipitating this lawsuit.

1

As detailed below, when GM had a motion to compel pending, which ultimately resulted in the entry of a default judgment, FCI's attorneys withdrew, a "new" entity named Diamond Nexus LLC ("DNLLC") was formed, and FCI filed formal Articles of Dissolution rendering the judgment that GM ultimately obtained against it virtually unenforceable. In the interim, this "new" company, DNLLC, continued the same business, uninterrupted, using the same physical address and using the same website through which FCI previously operated, www.diamondnexus.com. Based on the procedural history of the case, and the evidence set forth below, GM seeks to join DNLLC as a successor-in-interest of FCI pursuant to Rule 25(c) of the Federal Rules of Civil Procedure because (1) DNLLC is a mere continuation of FCI, and (2) DNLLC was formed, and took over the business operations of FCI, to frustrate and fraudulently avoid the operation of this Court's judgment against FCI and escape liability.

## II.    FACTUAL BACKGROUND

### A.    Procedural History of Litigation

1.    GM filed its Complaint against FCI on March 4, 2024, for trade secret misappropriation under the Federal Defend Trade Secrets Act (18 U.S.C. § 1839(3), trade secret misappropriation under the Illinois Trade Secrets Act (765 ILCS 1065/2(d)), and breach of contract. Dkt. 1.

2.    The Complaint alleged, among other things, that FCI entered into an NDA with GM pursuant to which GM provided FCI with CAD files for GM's proprietary jewelry design to allow FCI to advertise jewelry derived from those designs on its website, www.diamondnexus.com. FCI breached the terms of the NDA and misappropriated GM's proprietary design and manufacturing information from the CAD files for its own use. *See* Dkt. 1. A copy of the NDA was attached to the Complaint as an exhibit (Dkt. 1-1), as were roughly forty

screenshots from FCI's website, www.diamondnexus.com, of jewelry designs derived from GM's CAD files (Dkt. 1-2).

3. FCI admitted in its Answer "that Diamond Nexus is a division of Forever Companies, Inc. (f/k/a Lautrec Corporation), a Wyoming corporation with its principal place of business at 5050 W Ashland Way, Franklin, WI 53132." Dkt. 18 ¶ 6.

4. FCI also admitted in its Answer "that Diamond Nexus is a jewelry retailer in the business of marketing and selling jewelry." Dkt. 18 ¶ 16.

5. FCI also admitted in its Answer that "[f]rom 2015 until around September 2023, Diamond Nexus was a customer of" GM. Dkt. 18 ¶ 17.

6. In its Complaint, GM alleged that "Diamond Nexus has advertised and marketed GM Jewelry using images derived from the Confidential CADs, including through Diamond Nexus's website available at www.diamondnexus.com." Dkt. 1 ¶ 26. FCI's Answer "admits that Diamond Nexus advertised and marketed GM Jewelry on its website using images from some of GM's CADs." Dkt. 18 ¶ 26.

7. GM and FCI served their first sets of interrogatories and requests for production on July 12, 2024, and July 15, 2024, respectively. *See* Dkt. 19 at 1.

8. On or around July 23, 2024, FCI first informed GM that it anticipated filing for bankruptcy in the near future due to its poor financial condition. *See* Ex. 1, Declaration of Howard A. Koll ("Kroll Decl.") ¶ 2.

9. The parties agreed to multiple extensions of time to respond to discovery, including for purposes of participating in a settlement conference before Magistrate Judge Young B. Kim. *See* Kroll Decl. ¶ 3; Dkt. 23.

10. After receiving multiple extensions of time to respond to GM's discovery, FCI

ultimately failed to serve written objections or responses by the parties' agreed-upon deadline of October 23, 2024. Kroll Decl. ¶ 4.

11.     On October 24, 2024, GM filed a Status Report with the Court. Dkt. 32. It was not filed as a "Joint" Status Report because, as GM noted in the "Discovery Dispute" section of the Report, when GM's counsel contacted FCI's counsel about its failure to respond to written discovery, FCI's counsel, including attorneys from the law firms of Goldberg Segalla LLP and Meister Seelig & Fein PLLC, advised GM's counsel of their intent to withdraw. Dkt. 32 at 2.

12.     On October 28, 2024, the Court entered a minute order directing the parties to "fully exhaust their meet and confer efforts" regarding any discovery dispute. Dkt. 35.

13.     Despite their previous statements, FCI's counsel had not yet moved to withdraw as of November 8, 2024. Accordingly, counsel for GM contacted counsel for FCI regarding the timing of any motion to withdraw and to request to meet and confer regarding FCI's failure to respond to discovery as directed by the Court. Kroll Decl. ¶ 5.

14.     In response, Daniel R. Woods of Goldberg Segalla LLP explained that his firm's motion to withdraw would be filed in the coming days and stating he would "not be in a position to assist."[1] Kroll Decl. ¶ 6. However, Edmund J. Ferdinand, III of Meister Seelig & Fein PLLC responded stating, "We have not withdrawn yet but plan to depending on what happens with the client's business. Whether the client will remain a going concern beyond the next few weeks still remains in doubt." *Id.*

15.     On November 18, 2024, GM filed its Unopposed Motion to Compel requesting "an

---

[1] On November 11, 2024, attorneys from Goldberg Segalla LLP filed a motion to withdraw as counsel for FCI (Dkt. 37), which the Court subsequently granted (Dkt. 39).

4

order compelling Defendant Forever Companies, Inc. dba Diamond Nexus ("Diamond Nexus")" to respond to written discovery. Dkt. 38 at 1.

16. On November 21, 2024, the Court entered a minute order continuing Plaintiff's Unopposed Motion to Compel and ordering, "Plaintiff's counsel and remaining defense counsel are directed to meet and confer regarding the outstanding discovery requests in an effort to resolve the pending motion to compel. The parties shall include an update regarding those efforts in the 12/16/24 joint status report." Dkt. 40.

17. On December 6, 2024, counsel for GM contacted Mr. Ferdinand to request to meet and confer pursuant to the Court's minute order. Kroll Decl. ¶ 7. In response, Mr. Ferdinand stated that [FCI] "has confirmed that they are in fact moving toward liquidation and will have official documentation to share from their bank within the next two weeks." *Id.* Mr. Ferdinand further stated that there was "no need" to meet and confer. *Id.*

18. On December 26, 2024, the Court entered a minute order granting GM's motion to compel and ordering FCI to respond to GM's outstanding discovery by January 17, 2024, and further ordering the parties to file a joint status report by January 29, 2025. Dkt. 42.

19. On January 28, 2025, GM filed a Status Report advising the Court that "Diamond Nexus failed to respond to GM's outstanding discovery requests" in violation of the Court's minute order and asking the Court to "order Diamond Nexus to show cause why default judgment should not be entered against it as a sanction under Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure." Dkt. 44.

20. On January 30, 2025, Mr. Ferdinand filed a motion to withdraw as counsel for FCI explaining FCI "has been on the verge of insolvency for several months." Dkt. 45. In response, the Court set a telephonic hearing for March 10, 2025, and ordered FCI "to appear at the hearing

through newly retained counsel or a representative of the company." Dkt. 46.

21.     At the telephonic hearing on March 10, 2025, Lindsay Saletta appeared as FCI's corporate representative and explained to the Court that FCI intended to retain new counsel to represent FCI in the litigation. Accordingly, the Court granted Mr. Ferdinand's motion to withdraw and ordered FCI to appear through newly retained counsel at a telephonic rule to show cause hearing on March 24, 2025, as to why default judgment should not be entered against FCI. Dkt. 49.

22.     At the telephonic hearing on March 24, 2025, Ms. Saletta again appeared as corporate representative of FCI and advised the Court that FCI had not retained new counsel. Accordingly, the Court "enter[ed] an order of default and default judgment (in an amount to be determined by the Court in due course) against defendant." Dkt. 52.

23.     On April 4, 2025, GM filed declarations supporting GM's claimed damages of $540,922.20 and attorneys' fees of $128,691.50. Dkt. 54, 55.

24.     On July 21, 2025, the Court entered a Default Judgment Order against "Defendant Forever Companies, Inc. d/b/a Diamond Nexus ("Diamond Nexus")" which, due to the default, resulted in all well-pleaded factual allegations of the Complaint being taken as true. Dkt. 58. The Default Judgment Order awarded GM damages of $540,922.20, plus reasonable attorneys' fees of $128,691.50 and, additionally, permanently enjoined "Diamond Nexus and its agents, employees, successors, and assigns . . ." from using GM's trade secret and proprietary business information. Dkt. 48 at 7. The total amount of the judgment was $721,229.60. Dkt. 59.

**B.      Forever Companies Inc. is Dissolved and Diamond Nexus LLC is Created**

25.     FCI (f/k/a Lautrec Corporation) was a Wyoming corporation formed on December 5, 2005, registered to do business in Wisconsin with its principal place of business at 5050 W. Ashland Way, Franklin WI 53132. A copy of FCI's corporate record with the Wisconsin Secretary of State is attached as Ex. 2.

26.     The NDA at issue in GM's Complaint was signed on behalf of FCI by Brianne Smith (now known as Brianne Schroeder)[2] who held the title of Director of Sales. Dkt. 1-1 at 5.

27.     On or about April 21, 2025, FCI signed and filed Articles of Dissolution with the Wyoming Secretary of State. A copy of FCI's Articles of Dissolution is attached as Ex. 3.

28.     Just a few months earlier, on December 6, 2024, DNLLC was formed as a Delaware Limited Liability Company and, on January 8, 2025, was registered to do business in Wisconsin. A copy of DNLLC's corporate record with the Wisconsin Secretary of State is attached as Ex. 4.

29.     DNLLC's LinkedIn profile currently states that it has an address at 5050 W. Ashland Way in Franklin, Wisconsin and does business at www.diamondnexus.com. A screen capture of DNLLC's LinkedIn profile (www.linkedin.com/company/diamond-nexus-labs/about/) is attached as Ex. 5.

30.     The website available at www.diamondnexus.com also currently shows that it is operated by DNLLC and identifies its address as 5050 W Ashland Way, Franklin, WI 53132. A screen capture of DNLLC's "Terms and Conditions" page (https://www.diamondnexus.com/terms-of-service?srsltid=AfmBOorfrj-2L2YQJY48O-QSeQfkkEnf10FdRUuXptbaRQVfZGVh74Xn) is attached as Ex. 6. The website's "About Us" page further states: "Founded in 2005 and based in Wisconsin, Diamond Nexus has been a trusted resource for quality bridal and fashion jewelry for just about 20 years." A screen capture of DNLLC's "About Us" page is attached as Ex. 7.

31.     Brianne Schroeder maintains a LinkedIn profile that shows her as President of

_____

[2] GM is informed and believes, and on that basis alleges, that Brianne Smith now uses the name Brianne Schroeder.

Diamond Nexus LLC from April 2025 through the present. Ms. Schroeder's LinkedIn profile further states that she was previously employed by Forever Companies (i.e. FCI) for almost seventeen years (through June 2025 – even though she "started" at Diamond Nexus LLC in April 2025). In addition, her LindedIn profile states she held the position Director of Sales from September 2008 through June 2015 (which was Ms. Schroeder's listed title when she signed the NDA at or about this same time). A screen capture of Ms. Schroeder's LinkedIn profile is attached as Ex. 8 (*see also* www.linkedin.com/in/brianne-schroeder-5a771721/) .

32.     The www.diamondnexus.com website also contains a blog section, and one of the posted blogs is entitled "Happy Holidays: A Letter From Our CEO" with the text of the posted letter stating "I deeply thank everyone affiliated with Forever Companies for their effort. I thank our customers for their purchases, their referrals, and their ongoing commitment to our "movement." Forever Companies is committed to make fine jewelry accessible to more people, without negative environmental impact." The posted letter indicates it was "signed" by "Gary LaCourt, Founder and CEO, Forever Companies" and a copy of this post is attached as Ex. 9. (*see also* www.diamondnexus.com/blog/all/diamond-nexus-ceo-holiday-letter-2018)).

## III.     ARGUMENT

"Under Federal Rule 25(c), an entity can be substituted as the judgment debtor in an action '[i]f an interest is transferred' to that entity during litigation, including during proceedings to enforce a judgment." *United States v. Tower Contracting LLC*, No. 17 CR 656, 2023 WL 4533256, at *3 (N.D. Ill. July 13, 2023) (citations omitted). Courts have found that an "interest" is transferred when the entity to be substituted is a successor of the original party. *Tower Contracting*, 2023 WL 4533256, at *4 (citing *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 24 (7th Cir. 1977). "While a successor corporation does not generally assume the obligations of a transferor

corporation, courts recognize exceptions where the successor is merely a continuation of the transferring corporation, and where the transaction is entered into to escape liability." *Tower Contracting*, 2023 WL 4533256, at *4. DNLLC is the mere continuation of FCI, formed in an effort to avoid liability for the wrongful conduct alleged in GM's Complaint, and admitted by FCI, and should be joined in this matter as the judgment debtor with now-dissolved FCI.

### A. Diamond Nexus LLC is the Mere Continuation of Forever Companies Inc.

Successor liability may be imposed when "the purchasing entity is merely a continuation or reincarnation of the selling corporation. In other words, the purchasing corporation maintains the same or similar management and ownership, but merely wears different clothes." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 599 (7th Cir. 2005) (internal quotations and citation omitted). "[I]f a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." *Id*.

Courts consider several factors in determining whether a successor entity is a "mere continuation" of its predecessor, including: (1) continuity of ownership; (2) continuity of the business enterprise between the two companies; (3) whether the predecessor corporation ceases operations and then dissolves; and (4) whether the successor assumes the liabilities and obligations necessary for the uninterrupted continuation of the predecessor's business. *Tower Contracting*, 2023 WL 4533256, at *4. Taken together, these factors overwhelmingly demonstrate that DNLLC is a mere continuation of FCI.

> *(1) There is continuity of management, if not ownership, between FCI and DNLLC.*

Although DNLLC's ownership information is not publicly available, the key individual who executed the NDA for FCI, Brianne Smith (now Schroeder), moved directly into a leadership role at DNLLC during the same period FCI was dissolving. *See* Motion ¶¶ 26-27, 31.

9

Ms. Schroeder's LinkedIn profile indicates that she became President of DNLLC in April 2025 while still employed as Director of Sales by FCI through June 2025 (*id.* ¶ 31), reflecting at least continuity of key management personnel, if not ownership.[3] This continuity is further underscored by a "Message from Our CEO" posted on the DNLLC-operated Diamond Nexus website in which Gary LaCourt—identified as the Founder and CEO of Forever Companies—publicly thanks "everyone affiliated with Forever Companies," including customers and employees, and emphasizes the continuing mission of the business (*id.* ¶ 32), further demonstrating that DNLLC held itself out as a continuation of the same enterprise led by the same executive leadership.

*(2)    There is continuity of the business enterprise between FCI and DNLLC.*

The business operations carried out by FCI as "Diamond Nexus" continued uninterrupted under DNLLC. FCI had long operated its jewelry business under the Diamond Nexus trade name, using the www.diamondnexus.com website, from its principal place of business at 5050 W. Ashland Way, Franklin, Wisconsin. Motion ¶¶ 3, 6, 25. DNLLC now uses that same website, the same trade name, the same address, and holds itself out as having been founded in 2004 or 2005—years before DNLLC actually existed. *Id.* ¶¶ 29-30. In short, the same business that operated as FCI continued in all material respects under DNLLC immediately after the transfer.

*(3)    FCI has ceased operating and dissolved.*

Shortly after DNLLC was formed (December 6, 2024) and registered to do business in Wisconsin (January 8, 2025), FCI filed Articles of Dissolution with the Wyoming Secretary of

---

[3] At a minimum, in light of the currently available facts showing continuity of business operations, GM should be allowed to conduct discovery to determine whether there is continuity of ownership between FCI and DNLLC. *See Johnson v. United States,* No. 24 CV 11692, 2025 WL 2802984, at *3 (N.D. Ill. Oct. 1, 2025) (noting courts "recognize that discovery is often necessary to uncover details of a business transaction").

State on April 21, 2025. Motion ¶¶ 27-28. FCI's dissolution thus occurred while this litigation was pending, after the Court indicated it would enter default judgment against FCI, and after GM had filed supporting documentation for its claimed damages of $540,922.20 and attorneys' fees of $128,691.50. *Id.* ¶¶ 22-23. Because FCI has been dissolved, and all of its operating assets are now in active use by and as DNLLC, GM has no recourse against FCI.

*(4)      DNLLC assumed the necessary liabilities and operations of FCI.*

As set forth above, DNLLC is using the same trade name, operating out of the same physical address, using and selling the same or similar products through the same website (Motion ¶¶ 25, 29–30), and is run by the same woman that had been with FCI for seventeen years and who, while at FCI, had signed the NDA at issue in the Complaint (*id.* ¶¶ 26, 31). These facts indicate DNLLC assumed all essential business assets required for uninterrupted continuation of FCI's business operations.

**B.      Forever Companies Inc.'s Assets were Transferred for the Fraudulent Purpose of Escaping Liability**

Successor liability may also be imposed "where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Kalagian v. ClearFlame Engines, Inc.,* No. 24-CV-50471, 2025 WL 2076662, at *3 (N.D. Ill. July 23, 2025) (citing *People ex rel. Dep't of Hum. Rts. v. Oakridge Healthcare Ctr., LLC,* 2020 IL 124753, ¶ 20, 181 N.E.3d 184, 191). In determining whether debtors acted with fraudulent intent, courts may consider at least eleven "badges of fraud" laid out in Illinois's Uniform Fraudulent Transfer Act, 740 ILCS 160/5. *See id.*; *see also Johnson v. United States,* No. 24 CV 11692, 2025 WL 2802984, at *4 (N.D. Ill. Oct. 1, 2025). Relevant here, these badges of fraud include: (i) "the transfer or obligation was disclosed or concealed" (740 ILCS 160/5(b)(3); (ii) "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit" (740 ILCS 160/5(b)(4); (iii) "the

11

transfer was of substantially all the debtor's assets" (740 ILCS 160/5(b)(5); (iv) "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred" (740 ILCS 160/5(b)(9); and (v) "the transfer occurred shortly before or shortly after a substantial debt was incurred." (740 ILCS 160/5(b)(10).

*(1)     The transfer of FCI's assets was concealed.*

FCI never disclosed to GM or to the Court that it intended to transfer its business operations to a newly formed entity, DNLLC, even as it continued to litigate. On December 6, 2024—the day DNLLC was created—FCI's counsel told GM only that FCI was "moving toward liquidation" and that its ability to remain a going concern was uncertain (Motion ¶ 17, 28), consistent with earlier statements that FCI anticipated filing for bankruptcy (Motion ¶ 8). FCI's counsel likewise represented to the Court that FCI had been "been on the verge of insolvency for several months" (Motion ¶ 20), yet FCI continued to appear through its corporate representative at multiple court hearings (Motion ¶¶ 21–22) without ever disclosing the transfer to DNLLC. These circumstances satisfy this badge of fraud because they show that the transfer was not conducted openly but concealed.

*(2)     Before the transfer was made, FCI had been sued.*

GM filed this lawsuit on March 4, 2024 (Motion ¶ 1), and FCI participated in the litigation for over a year, including answering the Complaint and engaging (albeit inadequately) in discovery and participating in a settlement conference before this Court (*id.* ¶¶ 2-7, 9). DNLLC was formed on December 6, 2024, months after the lawsuit began and shortly after GM filed its motion to compel FCI's overdue discovery responses. *Id.* ¶¶ 15, 28. Thus, the transfer of the Diamond Nexus business occurred long after FCI had been sued, satisfying this badge of fraud.

*(3)     The transfer was of substantially all FCI's assets.*

Before dissolving, FCI primarily operated its jewelry business under the Diamond Nexus name at 5050 W. Ashland Way, Franklin, Wisconsin, using the www.diamondnexus.com website. Motion ¶¶ 3, 6, 25. DNLLC is now operating as "Diamond Nexus," from the same address, using the same website, and selling the same jewelry products. *Id.* ¶¶ 29-30. Critically, after the transfer, FCI filed Articles of Dissolution (*Id.* ¶ 27), and there is no evidence that FCI possessed any assets other than the Diamond Nexus operating business it transferred to DNLLC. The timing and circumstances of FCI's immediate dissolution confirm that substantially all of FCI's assets— including its brand, website, customer-facing operations, goodwill, and key personnel—were transferred to DNLLC, thus satisfying this badge of fraud.

*(4)     FCI became insolvent shortly after the transfer.*

Contemporaneous communications from FCI's own counsel confirm that FCI was "on the verge of insolvency" and "moving toward liquidation" during the exact period when DNLLC was formed for purposes of assuming the Diamond Nexus business operations. Motion ¶ 15, 17, 28. Within months of DNLLC's creation and Wisconsin registration, FCI formally filed Articles of Dissolution on April 21, 2025. *Id.* ¶ 27. FCI's insolvency thus followed almost immediately after the transfer of its operating business, satisfying another badge of fraud.

*(5)     The transfer occurred shortly before the Court entered default judgment.*

The transfer of the Diamond Nexus business occurred just as FCI faced increasing pressure in this litigation, including GM's motion to compel, an order requiring responses, and GM's request for an order to show cause regarding default judgment. Motion ¶¶ 15-21. DNLLC was formed shortly after GM's motion to compel was filed (*id.* ¶¶ 15, 25), and just months later—after the Court indicated it intended to enter default judgment—FCI dissolved (*id.* ¶¶ 20, 22). The

default judgment ultimately entered against FCI totaled $721,229.60, including damages and attorney's fees. *Id.* Again, this badge of fraud is satisfied because the transfer of assets occurred in anticipation of, and shortly before, the imposition of this substantial debt.

## IV.     CONCLUSION

The sequence of events makes clear that DNLLC is a mere continuation of FCI and that FCI transferred its business to DNLLC for the fraudulent purpose of evading liability. DNLLC has assumed the same trade name, operates from the same address, uses the same website, and retains key management personnel who had long served in leadership roles at FCI. Significantly, DNLLC was formed only after GM filed its unopposed motion to compel FCI's overdue discovery responses, and on the very same day FCI's counsel informed GM that FCI was "moving toward liquidation." Within months—while this litigation was still ongoing, after the Court had stated it intended to enter default judgment, and after GM submitted documents supporting its damages— FCI formally dissolved. Taken together, the timing and progression of these events suggest that FCI transferred its assets in anticipation of, and for the purpose of avoiding, the judgment in this case.

Because DNLLC is merely a continuation of FCI, and because the transfer of FCI's assets and operations was undertaken for the fraudulent purpose of escaping liability, the Court should grant GM's Rule 25(c) Motion and join DNLLC as a judgment debtor. If the Court requires additional information regarding continuity of ownership or the nature and consideration of any asset transfers, GM requests the opportunity to conduct discovery from DNLLC and any related individuals or entities concerning the transfer of FCI's assets and DNLLC's ownership structure.

Respectfully submitted,

By: _____

TUCKER ELLIS LLP
Daniel C. Curth
Howard A. Kroll
Helena M. Guye
233 S. Wacker Drive, Suite 6950
Chicago, IL 60606
Phone: 312.624.6300
E-mail: Daniel.Curth@tuckerellis.com
Howard.Kroll@tuckerellis..com
Helena.Guye@tuckerellis.com

15