**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GM CASTING HOUSE, INC., | |
| Plaintiff, | Case No. 1:24 CV-1821 |
| v. | Honorable Jeffery I. Cummings |
| FOREVER COMPANIES, INC., | |
| Defendants. | |

**DIAMOND NEXUS, LLC'S OPPOSITION TO PLAINTIFF'S**
**RULE 25(c) MOTION TO JOIN DIAMOND NEXUS, LLC AS JUDGMENT DEBTOR**

Diamond Nexus, LLC ("Diamond Nexus" or "DN LLC"), by and through its counsel, Greenberg Traurig, LLP, for its opposition to Plaintiff GM Casting House, Inc.'s ("GM" or "Plaintiff") Rule 25(c) Motion to Join Diamond Nexus, LLC as Judgment Debtor ("Motion" or "Motion to Join") states as follows:

## I.    INTRODUCTION

Without conducting post-judgment discovery, Plaintiff filed its Motion seeking to add Diamond Nexus as a judgment debtor based on incorrect assumptions and contentions that Diamond Nexus is a mere continuation of and that Forever's assets were transferred for the purpose of avoiding liability. Plaintiff's assumptions are incorrect and Motion is without merit.

Years before Plaintiff filed this action, Forever Companies, Inc. f/k/a Lautrec Corporation ("Forever") granted Byline Bank ("Byline") a valid, first-priority security interest in all of its assets to secure a loan extended y Byline. After Forever defaulted, Byline exercised its rights as a secured lender pursuant to Article 9 of the Uniform Commercial Code, as adopted in Wisconsin, and conducted a private disposition of its collateral. That disposition transferred all of Forever's rights in the assets to Diamond Nexus, an entity created by the buyer to acquire the assets. The transaction

was a secured creditor's commercially reasonable Article 9 disposition of collateral for fair and adequate consideration, with no assumption of liabilities and no continuity of ownership between Forever and Diamond Nexus.

These undisputed facts place this case squarely within the general rule that an asset purchaser does not succeed to the liabilities of the seller. Given the absence of common ownership, any assumption of liabilities, or evidence of a fraudulent purpose, Plaintiff cannot establish any recognized exception to that rule. Accordingly, Rule 25(c) provides no basis to add Diamond Nexus as a judgment debtor, and the Motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND

### A.  Byline Bank's Loan and First Priority Lien on all Assets of Forever.

On June 21, 2021, Byline Bank, an Illinois banking corporation ("Byline Bank"), made loans and extended credit to Forever, Defendant in this matter. (*See* Voluntary Surrender Agreement, attached as Exhibit 1 to the Agreement for Private Disposition, attached hereto as **Exhibit A**.) To secure such loans, Forever entered into a Security Agreement dated June 21, 2021, by which Forever granted to Byline Bank a first position security interest in all of Forever's assets (the "Collateral"), including:

> All goods, inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper (whether tangible or electronic), instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, commercial ton claims, contract rights and other rights to payment and performance (including but not limited to grant monies), insurance claims and proceeds, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs. supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all goodwill relating to the foregoing property; all records and data and embedded software

2

> relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process and such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

(*Id.*). Byline Bank properly perfected its security interest against the Collateral by the filing of UCC Financing Statements with the Wyoming Secretary of State on June 17, 2021, filing Number 202119359637, and on October 16, 2024, filing Number 2024-28612727. (*Id.* § C).

**B. Disposition of Collateral by Byline Bank Pursuant to Chapter 409 of Wisconsin Statutes due to Forever's Default Under the Loan.**

Forever defaulted on its obligations to Byline Bank. (*Id.* § D). As a result, Byline Bank exercised its rights and remedies as a secured lender against Forever, which surrendered the Collateral to Byline Bank. (*Id.*).

On April 3, 2025, Forever entered into the Voluntary Surrender Agreement, surrendering to Byline Bank possession of Collateral. (*Id.*). Pursuant to the Voluntary Surrender Agreement, "[s]ecured Party shall dispose of the Collateral with the proceeds of such disposition to be distributed and applied first to any expenses incurred by Secured Party in consummating said sale, if any, with the balance thereof to be applied against the obligations due and owing to Secured Party." (*Id.* ¶ 7).

On April 4, 2025, Byline Bank executed the Agreement for Private Disposition ("Agreement"), pursuant to which Byline Bank agreed to sell and transfer to Diamond Nexus, pursuant to Chapter 409 of the Wisconsin Statutes, all of the right, title and interest of Forever in and to the following portions of the Collateral (the "Transferred Assets"):

> All business assets of Forever, including, without limitation, inventory, intellectual property, goodwill, patents, trademarks, copyrights, other intellectual property, furniture, fixtures, equipment, computers, software, customer lists, customer orders, books and records, internet sites and domain names, telephone numbers,

and intangibles of Forever, wherever located which are subject to Byline Bank's security agreements and liens.

(Ex. A, ¶ 1).

The Agreement, and the transactions contemplated hereby, did not release, modify, or limit any right, title or interest of Byline in or to, or any lien or claim against any part of the Collateral other than the Transferred Assets including, but not limited to, the following "Excluded Assets": (a) any funds of Forever held by any third party including but not limited to financial institutions, credit card processors and/or insurers; (b) any accounts receivable; (c) any recourse against Gary LaCourt or any property he may have pledged as security to Byline; and (d) any SBA loan guaranty. (*Id.* ¶ 2).

Further, the Agreement expressly provides that:

> No Assumption of Liabilities. Neither Diamond nor Byline shall, directly or indirectly, assume any liabilities, obligations, or commitments of Forever of any kind or nature, whether absolute or contingent, known or unknown by the entry into this Agreement or the transactions contemplated hereby, including but not limited to the payment of any charges or taxes due to any governmental unit.

(*Id.* ¶ 3).

Diamond Nexus paid $2,000,000 (two million dollars) for the Transferred Assets. (*Id.* ¶¶ 5(b)(b)(i), 6). The transfer of Transferred Assets was further documented in a Transfer Statement made pursuant to Byline Bank's rights as a secured party to sell the Transferred Assets by private disposition for the repayment of indebtedness of Forever to Byline Bank under Wisconsin Statute Section 409.610. (*See id.* ¶ 1).

## III. ARGUMENT

Plaintiff's attempt to join Nexus Diamond as a judgment debtor is improper because (A) the Court lacks personal jurisdiction over Diamond Nexus, and (B) Plaintiff's assertions of successor liability lack any merit.

4

**A. The Court Lacks Personal Jurisdiction Over Diamond Nexus, LLC.**

Plaintiff seeks to join Diamond Nexus as a judgment debtor pursuant to Rule 25(c) of Federal Rules of Civil Procedure ("FRCP" or "Rule"). To join Diamond Nexus as a judgment debtor, the Court must have personal jurisdiction over it. *See Panther Pumps & Equip. Co. v. Hydrocraft, Inc.,* 566 F.2d 8, 23 (7th Cir. 1977) ("[t]he motion to substitute Universal faces an insurmountable obstacle: lack of personal jurisdiction."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant."). "Although a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.*, 804 F. Supp. 2d 730, 733 (N.D. Ill. 2011).

Personal jurisdiction can be either general or specific. *See Northern Grain Marketing, LLC v. Greving*, 743 F. 3d 487, 492 (7th Cir. 2014). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "at home" in that state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("The threshold for general jurisdiction is high"). Typically, corporations are found to be at home only in "the state of the corporation's principal place of business and the state of incorporation." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Courts apply the same at home test for limited liability companies to determine whether general jurisdiction is proper. *See Timberlake-Campbell v. Momence Meadows Nursing & Rehab. Ctr., LLC*, No. 24 CV 3322, 2024 WL 4625313, at *5 (N.D.

5

Ill. Oct. 29, 2024) (applying the *Daimler* at home test to determine general jurisdiction of a limited liability company).

Specific jurisdiction, by contrast, is "case-linked" and exists only where the plaintiff's claims arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). In other words, "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Northern Grain Marketing,* 743 F. 3d at 492 (internal citations omitted).

Here, Plaintiff does not even attempt to establish personal jurisdiction over Diamond Nexus and it could not do so. Diamond Nexus is a Delaware limited liability company with its principal place of business in Wisconsin. (*See* Ex. A, ¶ 1). It is therefore not "at home" in Illinois and is not subject to general jurisdiction here. *See Kipp*, 783 F.3d at 698-99 (finding that general jurisdiction was lacking for Wisconsin entity that had its principal place of business in that state; attendance at trade shows and collecting the email addresses of Illinois residence was not enough to say it was "at home" in Illinois). Specific jurisdiction is likewise lacking. Plaintiff does not allege—and cannot show—that its claims against Diamond Nexus arise out of or relate to Diamond Nexus's contacts with Illinois. Plaintiff's Rule 25(c) motion rests entirely on an alleged asset transaction that occurred in Wisconsin and is governed by Wisconsin law. (*See* Ex. A, ¶ 1). There is thus no relevant connection between Illinois and Plaintiff's claims against Diamond Nexus.

To the extent Plaintiff intends to rely on a theory of successor liability to manufacture personal jurisdiction, that also fails. As discussed below, Plaintiff cannot establish successor liability under any recognized theory. Absent successor liability, jurisdiction cannot be extended

6

to a nonresident entity. *See Cereal Byproducts Co. v. Georgia Yeast Prods., Inc.*, No. 89 C 3226, 1989 WL 152994, at \*4 (N.D. Ill. Nov. 13, 1989) (dismissing for lack of personal jurisdiction where plaintiff failed to establish alleged successor was a mere continuation of predecessor); *see also Apollo Galileo USA P'ship v. American Leisure Holdings, Inc.*, No. 07 C 4403, 2009 WL 377381, at \*8 (N.D. Ill. Feb. 11, 2009) (holding record was devoid of evidence sufficient to establish successor liability or otherwise show there were sufficient minimum contacts such that it would be fair to be haled to court in Illinois). Nor can Plaintiff rely on the forum-selection clause contained in the confidentiality and non-solicitation agreement between Plaintiff and Forever. Diamond Nexus is not, and never has been, a party to that agreement, and it did not consent to jurisdiction in this forum. A forum-selection clause cannot be invoked to hale a non-signatory into court absent exceptional circumstances not present here. *See Playboy Enters. Int'l, Inc.*, 804 F. Supp. 2d at 737 (N.D. Ill. 2011). Accordingly, this Court lacks personal jurisdiction over Diamond Nexus.

### B. Plaintiff's Assertions of Sussessor Liability Lack Any Merit.

Plaintiff's successor-liability theory is premised on incorrect assumptions that do not reflect the true nature of the transaction. In reality, the transaction is a result of Byline Bank's lawful exercise of its post-default enforcement remedies against Forever under Article 9 of the Uniform Commercial Code, as codified in Chapter 409 of the Wisconsin Statutes. Acting pursuant to valid and perfected security interests, Byline conducted a commercially reasonable private disposition of collateral, transferring specific assets—and expressly no liabilities—to Diamond Nexus for fair and adequate consideration, free and clear of liens. These undisputed facts place this case squarely within the well-settled general rule that an asset purchaser does not succeed to the liabilities of the seller.

7

"The general rule in the majority of American jurisdictions, including Wisconsin, is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325 (7th Cir. 1990) (same) *(quoting Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir. 1977); *Vernon v. Schuster*, 179 Ill. 2d 338, 344–45 (1997) ("The well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation."); *Gallenberg Equip., Inc. v. Agromac Int'l, Inc.*, 10 F. Supp. 2d 1050, 1053 (E.D. Wis. 1998), *aff'd*, 191 F.3d 456 (7th Cir. 1999). Illinois follows the same general rule of successor nonliability. *See Vernon*, 179 Ill. 2d at 346–47.

None of the narrow exceptions to the traditional rule of successor nonliability applies here: (1) where there is an express or implied agreement of assumption; (2) if the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purposes of escaping liability for the seller's obligations. *See Travis*, 565 F.2d at 446. While Plaintiff invokes only the third and fourth exceptions here, it is clear that those exceptions are inapplicable and fail as a matter of law and fact.[1]

---

[1] Plaintiff does not and cannot argue that the first two exceptions apply. *First*, there is no express or implied agreement to assume any liabilities; to the contrary, the Agreement expressly provides that "[n]either Diamond nor Byline shall, directly or indirectly, assume any liabilities, obligations, or commitments of Forever of any kind or nature, whether absolute or contingent, known or unknown by the entry into this Agreement or the transactions contemplated hereby . . .." (Ex. A, ¶ 3). *Second*, "[a] merger … involves the actual absorption of one corporation into another, with the former losing its existence as a separate corporate entity." *Leannais*, 565 F.2d at 439. That did not happen here.

8

### i. *Plaintiff's Assertions that Diamond Nexus is a Mere Continuation of Forever Lack Merit.*

The "mere continuation" exception to the general rule of successor nonliability is narrowly construed and "encompasses the situation where one corporation sells its assets to another with the same people owning both corporations." *Gallenberg Equip., Inc.*, 10 F. Supp. at 1053. Critically, in determining whether one corporation is a continuation of another, courts do not ask whether the successor continues the predecessor's business operations; rather, "the test used in the majority of jurisdictions is whether there is a continuation of the *corporate entity of the seller*—not whether there is a continuation of the *seller's business operation...*" *Vernon*, 179 Ill. 2d at 346–47 (emphasis in the original).

Accordingly, "[t]he majority of courts considering this exception emphasize a common identity of officers, directors, and stock between the selling and purchasing corporation as the key element of a 'continuation.'" *Tucker v. Paxson Mach. Co*., 645 F.2d 620, 625–26 (8th Cir. 1981), citing, *inter alia, Leannais,* 56 F.2d at 440; *Gallenberg*, 10 F. Supp. 2d at 1054 (requiring evidence of identity of ownership in order to meet the continuity exceptions to successor liability). Courts will not equate evidence control with ownership in determining whether the continuation exception applies; they are not the same. *Gallenberg*, 10 F. Supp. 2d at 1056. Illinois courts are especially clear on this point: common ownership is an indispensable prerequisite to imposing successor liability under the mere-continuation exception. *See, e.g., Cereal Byproducts*, No. 89 C 3226, 1989 WL 152994, at *4; *see also Mamacita, Inc. v. Colborne Acquisition Co., LLC*., No. 10 C 6861, 2011 WL 881654, at *4 (N.D. Ill. Mar. 11, 2011) (recognizing that Illinois courts have held the mere continuation exception "hinge[s] on a finding of common ownership in the new and former business."). Common ownership is similarly a key factor in the continuity exception to successor liability analysis under Wisconsin law. *See e.g., Gallenberg*, 10 F. Supp. at 1054.

9

Here, there is no continuity of corporate entity or ownership between Forever and Diamond Nexus. David Barr is, and has always been, the sole member of Diamond Nexus, and he never owned any stock or other ownership interest in Forever. Diamond Nexus has no corporate, ownership, or governance relationship to Forever and was formed solely for the purpose of acquiring assets through Byline Bank's valid exercise of its post-default enforcement remedies. This complete absence of corporate continuity and common ownership is fatal to Plaintiff's "mere continuation" theory as a matter of law. *See Mamacita, Inc.*, No. 10 C 6861, 2011 WL 881654, at *5 (despite showing recruitment of prior business associates and continued control, these allegations were not enough to state a claim for successor liability, specifically under the mere continuation exception).

Unable to establish the essential element of common ownership—because none exists—Plaintiff instead attempts to rely on alleged overlap in management, employees, or business operations. But courts have held that such factors are legally insufficient, standing alone, to establish mere-continuation liability. *See e.g. Cereal Byproducts Co*, No. 89 C 3226, 1989 WL 152994, at *4 (acknowledging that identical places of business at the same address and using the same manufacturing equipment was not sufficient to establish that alleged successor was a "mere continuation" to establish personal jurisdiction via theories of successor liability without showing that any of the former shareholders currently hold or have at any time held shares in alleged successor business); *Thornton v. M7 Aerospace LP*, 903 F. Supp. 2d 654, 664 (N.D. Ill. 2012) (finding no successor liability under theory of continuity, emphasizing the assets were transferred "free and clear of any and all liens, claims and encumbrances…and ***to a purchaser that was not an insider, affiliate or owner***…") (emphasis added); *Gallenberg*, 10 F. Supp. 2d at 1056 (holding

10

no successor liability, absent continuity of ownership, even where close ties existed between the principals of the predecessor and successor corporations).

### ii. *The Transaction Was a Proper Exercise of Byline Bank's Post-Default Remedies Pursuant to Chapter 409 of Wisconsin Statutes.*

Without properly investigating the facts, Plaintiff asserts that Forever's assets were transferred for fraudulent purpose of escaping liability. (Dkt. 64 at 11–13). That assertion is unfounded and ignores the undisputed record establishing a routine secured-creditor enforcement.

Indeed, the transaction at issue was lawful and commercially reasonable exercise of Byline's post-judgment enforcement rights. (*See* Ex. 1 to Ex. A, § D). Byline Bank held a valid, first-priority security interest in and to all of Forever's assets, pursuant to a Security Agreement executed in June 2021 and properly perfected through UCC filings. (*Id.* § C). After Forever defaulted on its loan obligations, Byline, acting under rights under Article 9 of the Uniform Commercial Code, as codified in Chapter 409 of the Wisconsin Statutes, conducted private disposition of the collateral for $2,000,000. (*See* Ex. A, ¶¶ 5(b)(b)(i), 6). Under Chapter 409 of the Wisconsin Statutes, a secured party's disposition of collateral after default transferred to the purchaser all of the debtor's rights in the collateral and discharged both the foreclosing security interest and any subordinate liens or claims. Wis. Stat. § 409.617(1). As a result, Diamond Nexus acquired the right to the Transferred Assets free and clear. *Id.* § 409.617(2).

As a result, Plaintiff's fraudulent-transfer theory fails as a matter of law, for several reasons. *First*, Plaintiff cannot show that transfer was without consideration as Diamond Nexus paid $2,000,000 for the assets. "[O]ne element essential to establishing a fraud-in-law conveyance [is] 'a transfer made for no or inadequate consideration,'" and that essential element cannot be established here. *In re Jumer's Castle Lodge, Inc.*, 338 B.R. 344, 353 (C.D. Ill. 2006), aff'd sub nom. *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943 (7th Cir. 2007)

11

(internal citations omitted); *see In re Grabill Corp.*, 121 B.R. 983, 997 (Bankr. N.D. Ill. 1990) (acknowledging that presumption of fraud in law can be rebutted if debtor can show adequate consideration was given for transfer).

Second, Plaintiff's reliance on asserted "badges of fraud" is misplaced and completely ignores the nature of the transaction at issue. While badges of fraud may, in certain circumstances, support an inference of fraudulent intent, the undisputed record here forecloses any such inference. *See In re Com. Loan Corp.*, 396 B.R. 730, 746 (Bankr. N.D. Ill. 2008) (explaining that badges are "simply considerations" and no set number or combination automatically demonstrates fraudulent intent). The transaction was a secured creditor's commercially reasonable Article 9 disposition of collateral for fair and adequate consideration, with no assumption of liabilities and no continuity of ownership between Forever and Diamond Nexus. Those facts preclude any inference of fraud. *See e.g., Glentel, Inc. v. Wireless Ventures, LLC*, 362 F. Supp. 2d 992, 1007–08 (N.D. Ind. 2005) (holding that the evidence was insufficient to prove a fraudulent transfer of assets for the purpose of escaping liability, where plaintiff failed to show that the transaction was motivated by an intent to evade debts rather than to satisfy legitimate creditor obligations); *see also Last Atlantis Capital LLC v. AGS Specialist LLC*, 601 F. Supp. 2d 1050, 1053 (N.D. Ill. 2009) (explaining that because there was no evidence that the asset sale was fraudulent, successor company did not assume liability, nullifying the basis for joinder under a Rule 25(c) theory of successor liability); *see also Gallenberg*, 10 F. Supp. 2d at 1057 ("[t]he evidence here does not show that the asset sale was a device to evade creditors, or that the purchase price was commercially unreasonable.").

Even if the Court were to consider Plaintiff's asserted "badges of fraud," those factors affirmatively weigh against, rather than support, any finding of fraudulent intent. The undisputed record shows a secured lender enforcing valid, perfected liens through a commercially reasonable

12

Article 9 disposition, payment of fair and adequate consideration, notice to creditors, a transfer limited to assets only with no assumption of liabilities, and a complete absence of continuity of ownership between Forever and Diamond Nexus. Under these circumstances, the fraud exception to the general rule of successor nonliability is clearly inapplicable. *See Davila v. Magna Holding Co.*, No. 97 C 1909, 2000 WL 263690, at *10–13 (N.D. Ill. Feb. 28, 2000) (explaining the evidence was insufficient to establish the fraudulent purpose exception to successor nonliability when it was not shown how the transfer was made to defraud creditors or avoid liability).

## CONCLUSION

Plaintiff has failed and cannot establish any recognized exception to the general rule of corporate successor nonliability. Because Rule 25(c) does not permit joinder in the absence of successor liability—and because this Court lacks personal jurisdiction over Diamond Nexus— Plaintiff's Motion to Join must be denied.

Dated: May 1, 2026

Respectfully submitted,

DIAMOND NEXUS, LLC

By: */s/ Martin S. Kedziora*
Martin Kedziora (ARDC 6300162)
C. Grace Filer (ARDC 6349009)
Greenberg Traurig, LLP
360 N. Green St., Suite 1300
Chicago, Illinois 60607
Phone: (312) 456-8400
Fax: (312) 456-8435
Email: kedzioram@gtlaw.com
Email: grace.filer@gtlaw.com

*Attorneys for Diamond Nexus, LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

_/s/ Martin Kedziora_

Martin Kedziora

14

# EXHIBIT A

## AGREEMENT FOR PRIVATE DISPOSITION

THIS AGREEMENT FOR PRIVATE DISPOSITION (this "Agreement"), dated as of the 4th day of April, 2025, is by and between Diamond Nexus LLC, a Delaware limited liability company ("Diamond") and Byline Bank, an Illinois banking corporation ("Byline").

### RECITALS

A.      Byline made loans and extended credit to Forever Companies, Inc. f/k/a Lautrec Corporation ("Forever") to acquire some of the business assets utilized in the operation of its business, which created a debtor/creditor relationship.

B.      Byline has perfected liens and security interests in and to materially all of Forever's assets (the "Collateral").

C.      Forever has defaulted under the terms of its agreements with Byline.

D.      Byline, in the exercise of its rights and remedies against Forever has taken steps to obtain a Voluntary Surrender Agreement concerning the Collateral, in the form attached as **Exhibit I**.

E.      Byline has issued a Notification of Disposition of Collateral in the form attached as **Exhibit II**.

F.      Diamond has offered to purchase the interests of Byline in some of the Collateral pursuant to the provisions of Chapter 409 of the Wisconsin Statutes.

G.      Byline has agreed to sell portions of the Collateral to Diamond as provided below.

### AGREEMENTS

In consideration of the Recitals and the mutual agreements which follow, the parties agree as follows:

1.      <u>Transfer of Assets</u>.  Subject to the terms and conditions of this Agreement, Byline agrees to sell to Diamond, and Diamond agrees to purchase and accept from Byline, pursuant to Chapter 409 of the Wisconsin Statutes, as of the Closing (as defined below), all of the right, title and interest of Forever in and to the following portions of the Collateral (the "Transferred Assets"):

> All business assets of Forever, including, without limitation, inventory, intellectual property, goodwill, patents, trademarks, copyrights, other intellectual property, furniture, fixtures, equipment, computers, software, customer lists, customer orders, books and records, internet sites and domain names, telephone numbers, and intangibles of Forever, wherever located which are subject to Byline Bank's security agreements and liens.

As provided in Chapter 409 of the Wisconsin Statutes, including but not limited to Section 409.617.  **This transaction is made by Byline on an "AS IS AND WHERE IS" basis and without representation, recourse or warranty of any kind, express or implied, including but**

**not limited to, the statutory warranties provided by Wisconsin Statutes Section 409.610(4), and any and all warranties as to the merchantability, validity, regularity, value, collectability, fitness for any purpose or use, condition, character, quality, durability, capability, suitability, or otherwise regarding the Transferred Assets (whether known or unknown or latent or apparent), or that the description of the Transferred Assets is accurate, or whether there are or will be any outstanding charges or taxes due to any governmental entity against the Transferred Assets, or as to title of the Transferred Assets.**

2. <u>Excluded Assets; Subordination</u>. This Agreement, and the transactions contemplated hereby, shall not release, modify, or limit any right, title or interest of Byline in or to, or any lien or claim against any part of the Collateral other than the Transferred Assets including, but not limited to, the following "Excluded Assets":

a. Any funds of Forever held by any third party including but not limited to financial institutions, credit card processors and/or insurers.

b. Any accounts receivable.

c. Any recourse against Gary LaCourt or any property he may have pledged as security to Byline.

d. Any SBA loan guaranty.

Diamond waives and releases any claims to the Excluded Assets.

3. <u>No Assumption of Liabilities</u>. Neither Diamond nor Byline shall, directly or indirectly, assume any liabilities, obligations, or commitments of Forever of any kind or nature, whether absolute or contingent, known or unknown by the entry into this Agreement or the transactions contemplated hereby, including but not limited to the payment of any charges or taxes due to any governmental unit.

4. <u>Closing</u>. The closing of the transactions contemplated by this Agreement shall take place no later than ten (10) days following full execution of this Agreement, via escrow, electronically, or at such other time, place or manner as the parties may agree ("Closing").

5. <u>Closing Deliveries</u>.

a. <u>Byline Deliveries</u>. At and after Closing, Byline shall deliver or cause to be delivered to Diamond the following:

(i) A Transfer Statement in the form attached hereto as **Exhibit III**, or in such other form as may be mutually agreed to by Byline and Diamond, duly executed by Byline;

(ii) A lien release and any other documents necessary to release the liens of Byline in the Transferred Assets; and

(iii) Such other documents as may be reasonably required to effectuate the transactions contemplated hereby.

2

b.      Diamond <u>Deliveries</u>. At and after Closing, Diamond shall deliver or cause to be delivered to Byline the following:

(i)      Payment of Two Million and No/100 Dollars ($2,000,000.00) to Byline.

(ii)      After Closing, and in a reasonable form, a statement, stipulation, consent or other document as may be required to disclaim any interest in any Excluded Asset, only in favor of Byline.

(iii)      Such other documents as may be reasonably required to effectuate the transactions contemplated hereby.

6.      <u>Purchase Price Allocation</u>. The purchase price for the Transferred Assets will be allocated One Million and No/100 Dollars ($1,000,000.00) to inventory, and One Million and No/100 Dollars ($1,000,000.00) to the remaining Transferred Assets.

7.      <u>Conditions to Obligations of Parties</u>. The respective obligations of Byline on the one hand, and Diamond, on the other hand, to close under this Agreement shall be conditioned upon there being no preliminary or permanent injunction or other order or decree issued by any federal, state, local, municipal governmental or quasi-governmental authority or court in effect or pending at or prior to Closing which materially delays, restrains, enjoins, or otherwise prohibits or seeks to restrain, enjoin, or otherwise prohibit the transactions contemplated hereby.

8.      <u>No Reliance on Byline as to Transferred Assets</u>. Diamond has exercised its own due diligence and inquiry as to Byline's security interest in the Collateral; has made its own determinations as to any other lien, security interest or other encumbrance which may now, or hereafter exist on the Transferred Assets; has made its own review of Byline's exercise of its post-default remedies with respect to the Collateral and Transferred Assets and compliance with Chapter 409 of the Wisconsin Statutes or otherwise, including the requirements of a commercially reasonable sale; and to title to the Transferred Assets.

9.      <u>Liability and Hold Harmless; Insurance</u>. Byline shall not be responsible or liable in any manner and for any reason for the actions of Diamond in the use or operation by Diamond of the Transferred Assets pursuant to this Agreement. Further, Diamond agrees to hold Byline harmless from any claims brought by any third party relating to matters of Diamond's use or operation of the Transferred Assets prior to Closing, if any. Diamond shall insure its pre-closing activities involving the Transferred Assets, if any, in a commercially reasonable manner.

10.      <u>Miscellaneous</u>.

a.      <u>Amendment and Severability</u>. This Agreement may only be amended by a written agreement of Byline and Diamond. If any provision, clause or part of this Agreement, or the application thereof under certain circumstances, is held invalid, the remainder of this Agreement, or the applications of each provision, clause, or part under other circumstances, shall not be affected thereby.

b.      <u>Governing Law; Venue</u>. This Agreement shall be governed by and subject to the laws of the State of Wisconsin. Any action to enforce rights under this Agreement

3

or related to it shall be brought only in the Circuit Court for Milwaukee County, or the U.S. District Court for the Eastern District of Wisconsin, as applicable.

      c.      <u>JURY WAIVER</u>. THE PARTIES HERETO IRREVOCABLY WAIVE, TO THE FULL EXTENT THEY MAY EFFECTIVELY DO SO, TRIAL BY JURY.

      d.      <u>Non-Waiver</u>. The failure of Byline or Diamond to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement, shall not be construed as a waiver or relinquishment of any rights granted hereunder or the future performance of any such term, covenant or condition.

      e.      <u>Benefit</u>. This Agreement shall be binding upon and inure to the benefit and burden of and shall be enforceable by Diamond and Byline, their successors and assigns. This Agreement may not be assigned by Byline or Diamond without the written consent of the other.

      f.      <u>Expenses</u>. All expenses incurred by Byline or Diamond in connection with the transactions contemplated hereby, including, without limitation, legal and accounting fees and any and all taxes applicable to or arising out of such transactions, shall be the sole responsibility of and for the account of the party who ordered the particular service or incurred the particular expense.

      g.      <u>Counterparts</u>. This Agreement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Agreement or any amendment hereto.

      h.      <u>Headings</u>. The headings of the sections herein are inserted for convenience and are not intended to be part of, or to affect the meaning or interpretation of this Agreement.

      i.      <u>Entire Agreement</u>. This Agreement for Private Disposition and the Transfer Statement are fully integrated agreements as to the transfer of the Transferred Assets.

In witness whereof, the parties have executed this Agreement for Private Disposition as of the date first written above.

DIAMOND NEXUS LLC

By: _____
    David Barr, Managing Member and
    Sole Shareholder

BYLINE BANK

By: *Christine Brauckhoff*_____
    Christine Brauckhoff, Vice President and
    Loan Workout Officer

4

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

## EXHIBIT I TO AGREEMENT FOR PRIVATE DISPOSITION

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

### VOLUNTARY SURRENDER AGREEMENT

This Voluntary Surrender Agreement is made this 3rd day of __April__, 2025, by and between Forever Companies, Inc. f/k/a Lautrec Corporation ("Debtor"), and Byline Bank ("Secured Party").

### RECITALS:

Debtor and Secured Party acknowledge the following:

A.     That on or about June 21, 2021, Secured Party made certain loans and extensions of credit to Debtor for the operation of its business (documents evidencing the foregoing being referred to as the "Loan Documents");

B.     That to secure such loans and extensions of credit, Debtor entered into a Security Agreement dated June 21, 2021 by which Debtor granted to Secured Party a first position lien against all assets of Debtor as described on Exhibit A (the "Collateral");

C.     That Secured Party has properly perfected its lien against the Collateral by the filing of UCC Financing Statements with the Wyoming Secretary of State on June 17, 2021, Filing Number 202119359637, and on October 16, 2024, Filing Number 2024-28612727; and

D.     That Debtor acknowledges that it is in default of its obligations to Secured Party and that Secured Party is legally entitled to take possession of the Collateral, or to have process issued as may be necessary to seize the Collateral.

### AGREEMENT

NOW, THEREFORE, in consideration of the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, the parties do hereinafter agree as follows:

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

1.     Effective as of the date set forth above, Debtor hereby surrenders to Secured Party possession of the Collateral at Debtor's place of business, 5050 West Ashland Way, Franklin, Wisconsin 53132 (the "Premises").

2.     Incident to the surrender of possession of the Collateral to Secured Party, Debtor waives any right to redeem the Collateral pursuant to any prior agreement with Secured Party, the Uniform Commercial Code, or any other applicable law or right.

3.     Notwithstanding the surrender of the Collateral, Debtor acknowledges that it continues to be obligated to Secured Party pursuant to the Loan Documents and otherwise at law regarding the Collateral until its obligations to Secured Party are satisfied in full. While the Collateral is controlled by Debtor, Debtor will: (a) preserve the identity of the Collateral and not commingle any proceeds of the Collateral with any other funds or monies and shall promptly remit any such proceeds to Secured Party at Secured Party's direction; (b) cease to use any of the Collateral or proceeds therefrom without the prior consent of Secured Party; (c) not remove any of the Collateral or proceeds thereof from the Premises or permit any other party to remove the Collateral from the Premises without the prior written consent of Secured Party; and (d) with regard to accounts and receivables, pursue and collect such receivables for the benefit of Secured Party at Secured Party's direction, and up through the time that any rights to said accounts and receivables are sold.

4.     Until such time as the Collateral has been sold, Debtor shall retain sole and exclusive control over its business activities, as well as its officers, employees and agents in all matters. Debtor acknowledges that Secured Party has not controlled or is not in control of Debtor in any manner. To the extent Debtor's officers, employees and agents assist in auctioning or liquidating the Collateral, said actions will be deemed and rendered as necessary and incident to

2

2

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

Debtor's meeting of its obligations to Secured Party, pursuant to the terms and provisions of the Loan Documents and applicable law.

5. The undersigned represents and warrants to Secured Party that he or she has the full authority to execute this Agreement for the Debtor and carry out its provisions as herein stated. Debtor hereby agrees to execute any and all other documents deemed necessary by Secured Party to evidence Debtor's voluntary and irrevocable surrender of the Collateral set forth herein and to evidence Debtor's sole ownership and title to said Collateral.

6. Debtor hereby acknowledges and agrees that every aspect of the proposed disposition of the Collateral by Secured Party, including without limitation, the method, place and terms of such disposition, including, but not limited to, the proposed direct private sale to a party designated by Secured Party, is commercially reasonable as that term is used and defined in the Wisconsin Statutes.

7. Secured Party shall dispose of the Collateral with the proceeds of such disposition to be distributed and applied first to any expenses incurred by Secured Party in consummating said sale, if any, with the balance thereof to be applied against the obligations due and owing to Secured Party. Secured Party shall be under no obligation to account to Debtor.

8. Debtor hereby waives any and all rights of notification of the sale or disposition of Collateral as may be required by the Wisconsin Statutes.

9. This Agreement may be amended only by a writing executed by the parties hereto.

10. This Agreement shall be construed in accordance with the laws of the State of Wisconsin.

3

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

11. Except with regard to the application of proceeds of sale pursuant to Wisconsin law, this Agreement shall not modify, release or satisfy any of Secured Party's rights, claims or liens.

12. Secured Party shall be entitled to dispose of the Collateral wherever currently located and Debtor shall cooperate with Secured Party in the sale, transfer or removal of the same. Debtor herein consents that Secured Party may store said Collateral wherever currently located or on the Premises until such time as the same may be sold. Secured Party shall have access to the Premises at all reasonable times for purposes of preparing said Collateral for sale, as well as proceeding with the sale of the same.

13. There are no other or further agreements between Debtor and Secured Party and no term of any other agreement between them is modified hereby.

14. Debtor agrees and acknowledges that Secured Party is not now, and has not been, in default of any obligation or duty to it. Further, and irrespective of any past breach or default, upon execution of this Agreement, Debtor hereby releases, discharges, and acquits Secured Party and its officers, directors, agents, participants, attorneys and employees, or anyone else similarly situated and acting for or on behalf of the foregoing, from any and all claims, demands, debts, accounts, contracts, liabilities, actions, and causes of action, whether in law or in equity, that the Debtor at any time had or has, hereafter may have, against Secured Party, its officers, directors, agents, participants, or employees, to the date of this Agreement.

15. This Agreement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or

4

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

5

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Agreement or any amendment hereto.

FOREVER COMPANIES, INC. f/k/a
LAUTREC CORPORATION

By: _____*Parag Vora*_____ (Seal)
Print: Parag Vora
Title: Sole Officer and Director
Date: 04/03/2025

5

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

## EXHIBIT A TO VOLUNTARY SURRENDER AGREEMENT

### COLLATERAL

All goods, inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper (whether tangible or electronic), instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, commercial tort claims, contract rights and other rights to payment and performance (including but not limited to grant monies), insurance claims and proceeds, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all goodwill relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process and such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

6

**EXHIBIT II TO AGREEMENT FOR PRIVATE DISPOSITION**

**NOTIFICATION OF DISPOSITION
AND CERTIFICATE OF SERVICE**

## NOTIFICATION OF DISPOSITION OF COLLATERAL

TO:        PARTIES ON THE ATTACHED SERVICE LIST

FROM:     BYLINE BANK

NAME OF
DEBTOR:   FOREVER COMPANIES, INC
          *f/k/a LAUTREC CORPORATION*

PLEASE TAKE NOTICE THAT BYLINE BANK WILL, BY PRIVATE SALE AFTER MONDAY, DECEMBER 2, 2024, SELL ALL INVENTORY, INTELLECTUAL PROPERTY, GOODWILL, PATENTS, TRADEMARKS, COPYRIGHTS, OTHER INTELLECTUAL PROPERTY, FURNITURE, FIXTURES, EQUIPMENT, COMPUTERS, SOFTWARE, CUSTOMER LISTS, CUSTOMER ORDERS, BOOKS AND RECORDS, INTERNET SITES AND DOMAIN NAMES, TELEPHONE NUMBERS, AND INTANGIBLES OF THE ABOVE-REFERENCED DEBTOR, WHEREVER LOCATED WHICH ARE SUBJECT TO BYLINE BANK'S SECURITY AGREEMENTS AND LIENS.

You may be entitled to an accounting of the unpaid indebtedness secured by the property to be sold.

You may request further information or an accounting by calling us at 262-542-4278.

BYLINE BANK

Date: 11\22\2024      By: _____
                                       Daniel Habeck, Attorney

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

**SERVICE LIST**

Forever Companies, Inc.
f/k/a Lautrec Corporation
5050 Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
1712 Pioneer Avenue, Suite 500
Cheyenne, WY 82001

Eco Grown Diamond
25W 45 Street
New York, NY 10036

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL 35203

WaterStone Bank SSB
11200 West Plank Court
Wauwatosa, WI 53226

Mr. Gary LaCourt
4419 Harts Road
Ringwood, IL 60072

Forever Companies, Inc.
c/o Attorney Joseph Brydges
Michael Best
1 S Pinckney St Unit 700
Madison, WI 53703
(Via email: jdbrydges@michaelbest.com
and U.S. Mail)

Forever Companies, Inc.
c/o Corporate Agents, LLC
1712 Pioneer Avenue, Suite 100
Cheyenne, WY 82001

CTHD Company
P.O. Box 2576
Springfield, IL 62708

U.S. Small Business Administration
Birmingham Disaster Loan Servicing Cener
2 North 20th Street, Suite 320
Birmingham, AL 35203
SBA Loan #####7806
Lautrec Corporation

Raj Seecharran, RA
5050 W. Ashland Way
Franklin, WI 53132

2

## CERTIFICATE OF SERVICE

STATE OF WISCONSIN    )
                        ) ss.
COUNTY OF WAUKESHA )

       Mary K. Sirek, being first duly sworn on oath, deposes and says that she is not a party to the within entitled action; that she is employed in the office of Cramer Multhauf LLP and that on November 22, 2024, true and correct copy of the Notification of Disposition of Collateral was served upon the parties listed below by email or by U.S. First Class Mail Service, postage paid, with return address noted thereon in the case of non-delivery:

Forever Companies, Inc.
f/k/a Lautrec Corporation
5050 Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
1712 Pioneer Avenue, Suite 500
Cheyenne, WY 82001

Eco Grown Diamond
25W 45 Street
New York, NY 10036

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL 35203

WaterStone Bank SSB
11200 West Plank Court
Wauwatosa, WI 53226

Mr. Gary LaCourt
4419 Harts Road
Ringwood, IL 60072

Raj Seecharran, RA
5050 W. Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
c/o Attorney Joseph Brydges
Michael Best
1 S Pinckney St Unit 700
Madison, WI 53703
(Via email: jdbrydges@michaelbest.com
and U.S. Mail)

Forever Companies, Inc.
c/o Corporate Agents, LLC
1712 Pioneer Avenue, Suite 100
Cheyenne, WY 82001

CTHD Company
P.O. Box 2576
Springfield, IL 62708

U.S. Small Business Administration
Birmingham Disaster Loan Servicing Cener
2 North 20th Street, Suite 320
Birmingham, AL 35203
SBA Loan #####7806
Lautrec Corporation

Subscribed and sworn to before
me this 22nd day of November, 2024.

_____
Notary Public, State of Wisconsin
My Commission expires:  09/04/28

_____
Mary K. Sirek

3

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

## EXHIBIT III TO AGREEMENT FOR PRIVATE DISPOSITION

### TRANSFER STATEMENT

BYLINE BANK (the "Transferor/Seller") and DIAMOND NEXUS LLC (the "Transferee/Purchaser") agree as follows:

### R E C I T A L S

A.  This Transfer Statement is delivered by Transferor/Seller to Transferee/Purchaser pursuant to that certain Agreement for Private Disposition, dated as of April 4, 2025, by and between Transferor/Seller and Transferee/Purchaser (the "Agreement");

B.  Pursuant to the provisions of certain loan documents and security instruments (the "Loan Documents"), Transferor/Seller holds a security interest in and upon certain personal property described on **Exhibit A**, (collectively, the "Transferred Assets") of Forever Companies, Inc. f/k/a Lautrec Corporation (the "Debtor") to secure payment of the obligations of the Debtor to Transferor/ Seller under the Loan Documents;

C.  The Debtor has defaulted, and remains in default, of its obligations, which are secured by the Transferred Assets, to Transferor/Seller under the terms of the Loan Documents;

D.  The Debtor has agreed pursuant to a certain Voluntary Surrender Agreement, to voluntarily surrender the Transferred Assets to Transferor/Seller;

E.  Transferor/Seller has received an offer to purchase the Transferred Assets from Transferee/Purchaser, pursuant to the Agreement; and

F.  Transferor/Seller has exercised its post-default remedies with respect to the Transferred Assets and by reason of the exercise of the Transferor/Seller's post-default remedies and upon the execution of this Transfer Statement, Transferee/Purchaser shall acquire all of Debtor's and/or Transferor/Seller's rights to the Transferred Assets.

### AGREEMENT

NOW THEREFORE, in consideration for the payment of the sum of Two Million and No/100 Dollars ($2,000,000.00) to Transferor/Seller from Transferee/Purchaser, the parties agree as follows:

1.  Capitalized terms not defined herein shall have the meanings assigned to them in the Agreement.

2.  Transferor/Seller hereby transfers to Transferee/Purchaser all of the right, title and interest of the Debtor in and to the Transferred Assets (as identified on **Exhibit A** attached hereto), as provided in Chapter 409 of the Wisconsin Statutes, effective 5:00 p.m. CST on April 4, 2025. Notwithstanding anything herein to the contrary, the Transferred Assets transferred to Purchaser hereunder shall not include the Excluded Assets as defined in the Agreement.

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

3. The transfer of Transferred Assets by this Transfer Statement is made pursuant to Transferor/Seller's rights as a secured party to sell the Transferred Assets by private disposition for the repayment of indebtedness of the Debtor to Transferor/Seller under Wisconsin Statute Section 409.610.

4. **The transfer of the Transferred Assets pursuant to this Transfer Statement is being made by the Transferor/Seller on an "AS IS AND WHERE IS" basis and without representation, recourse or warranty of any kind, express or implied, including but not limited to, the statutory warranties provided by Wisconsin Statutes Section 409.610(4), and any and all warranties as to the merchantability, validity, regularity, value, collectability, fitness for any purpose or use, condition, character, quality, durability, capability, suitability, ownership, or otherwise regarding the Transferred Assets (whether known or unknown or latent or apparent) or that the description of the Transferred Assets is accurate, or whether there are or will be any outstanding charges or taxes due to any governmental entity against the Transferred Assets.**

5. By acceptance of this Transfer Statement, Transferee/Purchaser acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by Transferor/Seller, or anyone acting on behalf of Transferor/Seller to Transferee/Purchaser regarding the subject of this Transfer Statement or the Transferred Assets being transferred which are not contained in this Transfer Statement.

6. Except with regard to the application of the Purchase Price in partial reduction of the Debtor's obligations, this Transfer Statement and the transfer affected shall not serve to modify, release, or satisfy Transferor/Seller's rights against Debtor or any other third party.

7. This Transfer Statement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Transfer Statement or any amendment hereto.

8. This Transfer Statement and the Agreement are a fully integrated agreement as to the transfer of the Transferred Assets and there are no other agreements between the parties.

9. The name and mailing address of the Transferor/Seller and the Transferee/Purchaser are as follows:

Transferor/Seller: Byline Bank
Attn: Christine Brauckhoff
10000 Innovation Drive, Suite 110
Wauwatosa, WI 53226

2

Transferee/Purchaser: Diamond Nexus LLC
Attn: David Barr
3535 Roswell Road, Suite 52
Marietta, GA 30062

Dated this 4th day of April, 2025.

BYLINE BANK

By: ___*EXHIBIT ONLY*___
Christine Brauckhoff, Vice President and
Loan Workout Officer

Diamond Nexus LLC the Transferee/Purchaser of the Transferred Assets, accepts the terms and conditions of this Transfer Statement, including that the Transferred Assets are transferred **AS IS, WHERE IS AND WITHOUT WARRANTY OR RECOURSE**. Transferee/Purchaser acknowledges receipt of this Transfer Statement this 4th day of April, 2025.

DIAMOND NEXUS LLC

By: ___*EXHIBIT ONLY*___
David Barr, Managing Member and
Sole Shareholder

3

## EXHIBIT A TO TRANSFER STATEMENT

All business assets of the Debtor, including, without limitation, inventory, intellectual property, goodwill, patents, trademarks, copyrights, other intellectual property, furniture, fixtures, equipment, computers, software, customer lists, customer orders, books and records, internet sites and domain names, telephone numbers, and intangibles of the above-referenced debtor, wherever located which are subject to Byline Bank's security agreements and liens.





## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 12E538F5-30C2-471F-8A49-002FD88400E1 | | Status: Completed |
| Subject: Complete with Docusign: Agreement for Private Disposition.pdf, Transfer Statement - EXECUTION C... | | |
| Source Envelope: | | |
| Document Pages: 21 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 3 | Initials: 0 | Christine Brauckhoff |
| AutoNav: Enabled | | 3639 N Broadway St |
| EnvelopeId Stamping: Enabled | | Chicago, IL  60613-4421 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | cbrauckhoff@bylinebank.com |
| | | IP Address: 52.162.139.161 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Christine Brauckhoff | Location: DocuSign |
|     4/4/2025 7:54:02 AM |     cbrauckhoff@bylinebank.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| David Barr<br>davidbarr@pmtd.com<br>Managing Member<br>Security Level: Email, Account Authentication (None), Authentication | DocuSigned by:<br>154190CA40E541D...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 72.185.78.112 | Sent: 4/4/2025 7:59:12 AM<br>Viewed: 4/4/2025 11:24:05 AM<br>Signed: 4/4/2025 11:24:37 AM<br>Freeform Signing |

**Authentication Details**
ID Check:
    Transaction: 31036381296315
    Result: passed
    Vendor ID: LexisNexis
    Type: iAuth
    Recipient Name Provided by: Recipient
    Information Provided for ID Check: Address,
SSN9, SSN4, DOB
    Performed: 4/4/2025 11:23:52 AM

Question Details:
passed   property.city.real
passed   property.association.single.fake
passed   vehicle.historical.color.real
passed   vehicle.historical.color.real
passed   property.street.in.city.real
passed   vehicle.historical.association.real

**Electronic Record and Signature Disclosure:**
    Accepted: 4/4/2025 11:24:05 AM
    ID: df74844d-b81c-41c1-8651-56dc13d43f5a

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/4/2025 7:59:12 AM |
| Certified Delivered | Security Checked | 4/4/2025 11:24:05 AM |
| Signing Complete | Security Checked | 4/4/2025 11:24:37 AM |
| Completed | Security Checked | 4/4/2025 11:24:37 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |
| **Electronic Record and Signature Disclosure** | | |

Electronic Record and Signature Disclosure created on: 8/5/2020 4:05:32 PM
Parties agreed to: David Barr

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

Byline Bank offers delivery of certain Treasury Management documents to you in electronic form.  Described below are the terms and conditions for providing such documents through the DocuSign system. Please read the information below carefully and thoroughly.  If you can access this information electronically to your satisfaction and agree to receive and sign documents electronically, please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you

### How to contact Byline Bank:

If you have any questions, you may contact us as follows:

To contact us via email send messages to: cashmanagement@bylinebank.com

To Contact us via USPS, mail your request to:

> Byline Bank
> Attn: Treasury Management
> 180 North LaSalle 4th Floor
> Chicago, IL 60601

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here:  https://support.docusign.com/guides/signer-guide-signing-system-requirements