**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GM CASTING HOUSE, INC.,

        Plaintiff,

v.

FOREVER COMPANIES, INC.,

        Defendants.

Case No. 1:24 CV-1821

**AFFIDAVIT OF DAVID BARR**

I, David Barr, being duly sworn, deposes and say:

1.     I am the sole member and officer of Diamond Nexus, LLC ("Diamond Nexus"), a Delaware limited liability company, with principal place of business at 7198 South Millers Way, Suite 205, Oak Creek, Wisconsin 53154, an entity formed to acquire certain assets of Forever Companies, Inc. ("Forever").

2.     I have never held, directly or indirectly, any stock or ownership interest in Forever.

3.     I have never served as an officer of Forever.

4.     I have never exercised, or had the right to exercise, any control, management authority, signatory authority, or decision-making power over Forever.

5.     On April 4, 2025, Byline Bank and Diamond Nexus executed the Agreement for Private Disposition ("Agreement"), a copy of which is attached hereto as **Exhibit A.**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Further affiant sayeth not.

*/s/ David Barr*
DAVID BARR

# EXHIBIT A

## AGREEMENT FOR PRIVATE DISPOSITION

THIS AGREEMENT FOR PRIVATE DISPOSITION (this "Agreement"), dated as of the 4th day of April, 2025, is by and between Diamond Nexus LLC, a Delaware limited liability company ("Diamond") and Byline Bank, an Illinois banking corporation ("Byline").

### RECITALS

A.      Byline made loans and extended credit to Forever Companies, Inc. f/k/a Lautrec Corporation ("Forever") to acquire some of the business assets utilized in the operation of its business, which created a debtor/creditor relationship.

B.      Byline has perfected liens and security interests in and to materially all of Forever's assets (the "Collateral").

C.      Forever has defaulted under the terms of its agreements with Byline.

D.      Byline, in the exercise of its rights and remedies against Forever has taken steps to obtain a Voluntary Surrender Agreement concerning the Collateral, in the form attached as **Exhibit I**.

E.      Byline has issued a Notification of Disposition of Collateral in the form attached as **Exhibit II**.

F.      Diamond has offered to purchase the interests of Byline in some of the Collateral pursuant to the provisions of Chapter 409 of the Wisconsin Statutes.

G.      Byline has agreed to sell portions of the Collateral to Diamond as provided below.

### AGREEMENTS

In consideration of the Recitals and the mutual agreements which follow, the parties agree as follows:

1.      <u>Transfer of Assets</u>.  Subject to the terms and conditions of this Agreement, Byline agrees to sell to Diamond, and Diamond agrees to purchase and accept from Byline, pursuant to Chapter 409 of the Wisconsin Statutes, as of the Closing (as defined below), all of the right, title and interest of Forever in and to the following portions of the Collateral (the "Transferred Assets"):

> All business assets of Forever, including, without limitation, inventory, intellectual property, goodwill, patents, trademarks, copyrights, other intellectual property, furniture, fixtures, equipment, computers, software, customer lists, customer orders, books and records, internet sites and domain names, telephone numbers, and intangibles of Forever, wherever located which are subject to Byline Bank's security agreements and liens.

As provided in Chapter 409 of the Wisconsin Statutes, including but not limited to Section 409.617. **This transaction is made by Byline on an "AS IS AND WHERE IS" basis and without representation, recourse or warranty of any kind, express or implied, including but**

Docusign Envelope ID: 12E538F5-30C2-474F-8A49-002FD88400F1

**not limited to, the statutory warranties provided by Wisconsin Statutes Section 409.610(4), and any and all warranties as to the merchantability, validity, regularity, value, collectability, fitness for any purpose or use, condition, character, quality, durability, capability, suitability, or otherwise regarding the Transferred Assets (whether known or unknown or latent or apparent), or that the description of the Transferred Assets is accurate, or whether there are or will be any outstanding charges or taxes due to any governmental entity against the Transferred Assets, or as to title of the Transferred Assets.**

2.     <u>Excluded Assets; Subordination</u>. This Agreement, and the transactions contemplated hereby, shall not release, modify, or limit any right, title or interest of Byline in or to, or any lien or claim against any part of the Collateral other than the Transferred Assets including, but not limited to, the following "Excluded Assets":

a.     Any funds of Forever held by any third party including but not limited to financial institutions, credit card processors and/or insurers.

b.     Any accounts receivable.

c.     Any recourse against Gary LaCourt or any property he may have pledged as security to Byline.

d.     Any SBA loan guaranty.

Diamond waives and releases any claims to the Excluded Assets.

3.     <u>No Assumption of Liabilities</u>.  Neither Diamond nor Byline shall, directly or indirectly, assume any liabilities, obligations, or commitments of Forever of any kind or nature, whether absolute or contingent, known or unknown by the entry into this Agreement or the transactions contemplated hereby, including but not limited to the payment of any charges or taxes due to any governmental unit.

4.     <u>Closing</u>.  The closing of the transactions contemplated by this Agreement shall take place no later than ten (10) days following full execution of this Agreement, via escrow, electronically, or at such other time, place or manner as the parties may agree ("Closing").

5.     <u>Closing Deliveries</u>.

a.     <u>Byline Deliveries</u>. At and after Closing, Byline shall deliver or cause to be delivered to Diamond the following:

(i)     A Transfer Statement in the form attached hereto as **Exhibit III**, or in such other form as may be mutually agreed to by Byline and Diamond, duly executed by Byline;

(ii)     A lien release and any other documents necessary to release the liens of Byline in the Transferred Assets; and

(iii)     Such other documents as may be reasonably required to effectuate the transactions contemplated hereby.

b.    <u>Diamond Deliveries</u>. At and after Closing, Diamond shall deliver or cause to be delivered to Byline the following:

(i)    Payment of Two Million and No/100 Dollars ($2,000,000.00) to Byline.

(ii)    After Closing, and in a reasonable form, a statement, stipulation, consent or other document as may be required to disclaim any interest in any Excluded Asset, only in favor of Byline.

(iii)    Such other documents as may be reasonably required to effectuate the transactions contemplated hereby.

6.    <u>Purchase Price Allocation</u>. The purchase price for the Transferred Assets will be allocated One Million and No/100 Dollars ($1,000,000.00) to inventory, and One Million and No/100 Dollars ($1,000,000.00) to the remaining Transferred Assets.

7.    <u>Conditions to Obligations of Parties</u>. The respective obligations of Byline on the one hand, and Diamond, on the other hand, to close under this Agreement shall be conditioned upon there being no preliminary or permanent injunction or other order or decree issued by any federal, state, local, municipal governmental or quasi-governmental authority or court in effect or pending at or prior to Closing which materially delays, restrains, enjoins, or otherwise prohibits or seeks to restrain, enjoin, or otherwise prohibit the transactions contemplated hereby.

8.    <u>No Reliance on Byline as to Transferred Assets</u>. Diamond has exercised its own due diligence and inquiry as to Byline's security interest in the Collateral; has made its own determinations as to any other lien, security interest or other encumbrance which may now, or hereafter exist on the Transferred Assets; has made its own review of Byline's exercise of its post-default remedies with respect to the Collateral and Transferred Assets and compliance with Chapter 409 of the Wisconsin Statutes or otherwise, including the requirements of a commercially reasonable sale; and to title to the Transferred Assets.

9.    <u>Liability and Hold Harmless; Insurance</u>. Byline shall not be responsible or liable in any manner and for any reason for the actions of Diamond in the use or operation by Diamond of the Transferred Assets pursuant to this Agreement. Further, Diamond agrees to hold Byline harmless from any claims brought by any third party relating to matters of Diamond's use or operation of the Transferred Assets prior to Closing, if any. Diamond shall insure its pre-closing activities involving the Transferred Assets, if any, in a commercially reasonable manner.

10.    <u>Miscellaneous</u>.

a.    <u>Amendment and Severability</u>. This Agreement may only be amended by a written agreement of Byline and Diamond. If any provision, clause or part of this Agreement, or the application thereof under certain circumstances, is held invalid, the remainder of this Agreement, or the applications of each provision, clause, or part under other circumstances, shall not be affected thereby.

b.    <u>Governing Law; Venue</u>. This Agreement shall be governed by and subject to the laws of the State of Wisconsin. Any action to enforce rights under this Agreement

3

or related to it shall be brought only in the Circuit Court for Milwaukee County, or the U.S. District Court for the Eastern District of Wisconsin, as applicable.

    c. <u>JURY WAIVER</u>. THE PARTIES HERETO IRREVOCABLY WAIVE, TO THE FULL EXTENT THEY MAY EFFECTIVELY DO SO, TRIAL BY JURY.

    d. <u>Non-Waiver</u>.  The failure of Byline or Diamond to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement, shall not be construed as a waiver or relinquishment of any rights granted hereunder or the future performance of any such term, covenant or condition.

    e. <u>Benefit</u>.  This Agreement shall be binding upon and inure to the benefit and burden of and shall be enforceable by Diamond and Byline, their successors and assigns.  This Agreement may not be assigned by Byline or Diamond without the written consent of the other.

    f. <u>Expenses</u>.  All expenses incurred by Byline or Diamond in connection with the transactions contemplated hereby, including, without limitation, legal and accounting fees and any and all taxes applicable to or arising out of such transactions, shall be the sole responsibility of and for the account of the party who ordered the particular service or incurred the particular expense.

    g. <u>Counterparts</u>.  This Agreement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Agreement or any amendment hereto.

    h. <u>Headings</u>.  The headings of the sections herein are inserted for convenience and are not intended to be part of, or to affect the meaning or interpretation of this Agreement.

    i. <u>Entire Agreement</u>.  This Agreement for Private Disposition and the Transfer Statement are fully integrated agreements as to the transfer of the Transferred Assets.

  In witness whereof, the parties have executed this Agreement for Private Disposition as of the date first written above.

DIAMOND NEXUS LLC

By:_____
  David Barr, Managing Member and
  Sole Shareholder

BYLINE BANK

By:_Christine Brauckhoff_____
  Christine Brauckhoff, Vice President and
  Loan Workout Officer

4

Docusign Envelope ID: 12E538F5-30C2-474F-8A49-002FD88400E1

## EXHIBIT I TO AGREEMENT FOR PRIVATE DISPOSITION

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

### VOLUNTARY SURRENDER AGREEMENT

This Voluntary Surrender Agreement is made this 3rd day of ___April___, 2025, by and between Forever Companies, Inc. f/k/a Lautrec Corporation ("Debtor"), and Byline Bank ("Secured Party").

### RECITALS:

Debtor and Secured Party acknowledge the following:

A.      That on or about June 21, 2021, Secured Party made certain loans and extensions of credit to Debtor for the operation of its business (documents evidencing the foregoing being referred to as the "Loan Documents");

B.      That to secure such loans and extensions of credit, Debtor entered into a Security Agreement dated June 21, 2021 by which Debtor granted to Secured Party a first position lien against all assets of Debtor as described on Exhibit A (the "Collateral");

C.      That Secured Party has properly perfected its lien against the Collateral by the filing of UCC Financing Statements with the Wyoming Secretary of State on June 17, 2021, Filing Number 202119359637, and on October 16, 2024, Filing Number 2024-28612727; and

D.      That Debtor acknowledges that it is in default of its obligations to Secured Party and that Secured Party is legally entitled to take possession of the Collateral, or to have process issued as may be necessary to seize the Collateral.

### AGREEMENT

NOW, THEREFORE, in consideration of the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, the parties do hereinafter agree as follows:

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002FD88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

1.      Effective as of the date set forth above, Debtor hereby surrenders to Secured Party possession of the Collateral at Debtor's place of business, 5050 West Ashland Way, Franklin, Wisconsin 53132 (the "Premises").

2.      Incident to the surrender of possession of the Collateral to Secured Party, Debtor waives any right to redeem the Collateral pursuant to any prior agreement with Secured Party, the Uniform Commercial Code, or any other applicable law or right.

3.      Notwithstanding the surrender of the Collateral, Debtor acknowledges that it continues to be obligated to Secured Party pursuant to the Loan Documents and otherwise at law regarding the Collateral until its obligations to Secured Party are satisfied in full. While the Collateral is controlled by Debtor, Debtor will: (a) preserve the identity of the Collateral and not commingle any proceeds of the Collateral with any other funds or monies and shall promptly remit any such proceeds to Secured Party at Secured Party's direction; (b) cease to use any of the Collateral or proceeds therefrom without the prior consent of Secured Party; (c) not remove any of the Collateral or proceeds thereof from the Premises or permit any other party to remove the Collateral from the Premises without the prior written consent of Secured Party; and (d) with regard to accounts and receivables, pursue and collect such receivables for the benefit of Secured Party at Secured Party's direction, and up through the time that any rights to said accounts and receivables are sold.

4.      Until such time as the Collateral has been sold, Debtor shall retain sole and exclusive control over its business activities, as well as its officers, employees and agents in all matters. Debtor acknowledges that Secured Party has not controlled or is not in control of Debtor in any manner. To the extent Debtor's officers, employees and agents assist in auctioning or liquidating the Collateral, said actions will be deemed and rendered as necessary and incident to

2

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002FD88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

Debtor's meeting of its obligations to Secured Party, pursuant to the terms and provisions of the Loan Documents and applicable law.

5.     The undersigned represents and warrants to Secured Party that he or she has the full authority to execute this Agreement for the Debtor and carry out its provisions as herein stated. Debtor hereby agrees to execute any and all other documents deemed necessary by Secured Party to evidence Debtor's voluntary and irrevocable surrender of the Collateral set forth herein and to evidence Debtor's sole ownership and title to said Collateral.

6.     Debtor hereby acknowledges and agrees that every aspect of the proposed disposition of the Collateral by Secured Party, including without limitation, the method, place and terms of such disposition, including, but not limited to, the proposed direct private sale to a party designated by Secured Party, is commercially reasonable as that term is used and defined in the Wisconsin Statutes.

7.     Secured Party shall dispose of the Collateral with the proceeds of such disposition to be distributed and applied first to any expenses incurred by Secured Party in consummating said sale, if any, with the balance thereof to be applied against the obligations due and owing to Secured Party. Secured Party shall be under no obligation to account to Debtor.

8.     Debtor hereby waives any and all rights of notification of the sale or disposition of Collateral as may be required by the Wisconsin Statutes.

9.     This Agreement may be amended only by a writing executed by the parties hereto.

10.    This Agreement shall be construed in accordance with the laws of the State of Wisconsin.

3

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

11.     Except with regard to the application of proceeds of sale pursuant to Wisconsin law, this Agreement shall not modify, release or satisfy any of Secured Party's rights, claims or liens.

12.     Secured Party shall be entitled to dispose of the Collateral wherever currently located and Debtor shall cooperate with Secured Party in the sale, transfer or removal of the same. Debtor herein consents that Secured Party may store said Collateral wherever currently located or on the Premises until such time as the same may be sold. Secured Party shall have access to the Premises at all reasonable times for purposes of preparing said Collateral for sale, as well as proceeding with the sale of the same.

13.     There are no other or further agreements between Debtor and Secured Party and no term of any other agreement between them is modified hereby.

14.     Debtor agrees and acknowledges that Secured Party is not now, and has not been, in default of any obligation or duty to it. Further, and irrespective of any past breach or default, upon execution of this Agreement, Debtor hereby releases, discharges, and acquits Secured Party and its officers, directors, agents, participants, attorneys and employees, or anyone else similarly situated and acting for or on behalf of the foregoing, from any and all claims, demands, debts, accounts, contracts, liabilities, actions, and causes of action, whether in law or in equity, that the Debtor at any time had or has, hereafter may have, against Secured Party, its officers, directors, agents, participants, or employees, to the date of this Agreement.

15.     This Agreement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or

4

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Agreement or any amendment hereto.

FOREVER COMPANIES, INC. f/k/a
LAUTREC CORPORATION

By: _____*Parag Vora*_____ (Seal)

Print: Parag Vora

Title: Sole Officer and Director

Date: 04/03/2025

Docusign Envelope ID: DB2BF075-F6D3-450D-B087-743FC923AE6A

## EXHIBIT A TO VOLUNTARY SURRENDER AGREEMENT

### COLLATERAL

All goods, inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper (whether tangible or electronic), instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, commercial tort claims, contract rights and other rights to payment and performance (including but not limited to grant monies), insurance claims and proceeds, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all goodwill relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process and such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

6

6

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

# EXHIBIT II TO AGREEMENT FOR PRIVATE DISPOSITION

## NOTIFICATION OF DISPOSITION
## AND CERTIFICATE OF SERVICE

### NOTIFICATION OF DISPOSITION OF COLLATERAL

TO:       PARTIES ON THE ATTACHED SERVICE LIST

FROM:     BYLINE BANK

NAME OF
DEBTOR:   FOREVER COMPANIES, INC
            *f/k/a LAUTREC CORPORATION*

PLEASE TAKE NOTICE THAT BYLINE BANK WILL, BY PRIVATE SALE AFTER MONDAY, DECEMBER 2, 2024, SELL ALL INVENTORY, INTELLECTUAL PROPERTY, GOODWILL, PATENTS, TRADEMARKS, COPYRIGHTS, OTHER INTELLECTUAL PROPERTY, FURNITURE, FIXTURES, EQUIPMENT, COMPUTERS, SOFTWARE, CUSTOMER LISTS, CUSTOMER ORDERS, BOOKS AND RECORDS, INTERNET SITES AND DOMAIN NAMES, TELEPHONE NUMBERS, AND INTANGIBLES OF THE ABOVE-REFERENCED DEBTOR, WHEREVER LOCATED WHICH ARE SUBJECT TO BYLINE BANK'S SECURITY AGREEMENTS AND LIENS.

You may be entitled to an accounting of the unpaid indebtedness secured by the property to be sold.

You may request further information or an accounting by calling us at 262-542-4278.

BYLINE BANK

Date: 11\22\2024      By: _____
                                    Daniel Habeck, Attorney

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

**SERVICE LIST**

Forever Companies, Inc.
f/k/a Lautrec Corporation
5050 Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
1712 Pioneer Avenue, Suite 500
Cheyenne, WY 82001

Eco Grown Diamond
25W 45 Street
New York, NY 10036

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL 35203

WaterStone Bank SSB
11200 West Plank Court
Wauwatosa, WI 53226

Mr. Gary LaCourt
4419 Harts Road
Ringwood, IL 60072

Forever Companies, Inc.
c/o Attorney Joseph Brydges
Michael Best
1 S Pinckney St Unit 700
Madison, WI 53703
(Via email: jdbrydges@michaelbest.com
and U.S. Mail)

Forever Companies, Inc.
c/o Corporate Agents, LLC
1712 Pioneer Avenue, Suite 100
Cheyenne, WY 82001

CTHD Company
P.O. Box 2576
Springfield, IL 62708

U.S. Small Business Administration
Birmingham Disaster Loan Servicing Cener
2 North 20th Street, Suite 320
Birmingham, AL 35203
SBA Loan #####7806
Lautrec Corporation

Raj Seecharran, RA
5050 W. Ashland Way
Franklin, WI 53132

2

## CERTIFICATE OF SERVICE

STATE OF WISCONSIN   )
                             ) ss.
COUNTY OF WAUKESHA )

      Mary K. Sirek, being first duly sworn on oath, deposes and says that she is not a party to the within entitled action; that she is employed in the office of Cramer Multhauf LLP and that on November 22, 2024, true and correct copy of the Notification of Disposition of Collateral was served upon the parties listed below by email or by U.S. First Class Mail Service, postage paid, with return address noted thereon in the case of non-delivery:

Forever Companies, Inc.
f/k/a Lautrec Corporation
5050 Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
1712 Pioneer Avenue, Suite 500
Cheyenne, WY 82001

Eco Grown Diamond
25W 45 Street
New York, NY 10036

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL 35203

WaterStone Bank SSB
11200 West Plank Court
Wauwatosa, WI 53226

Mr. Gary LaCourt
4419 Harts Road
Ringwood, IL 60072

Raj Seecharran, RA
5050 W. Ashland Way
Franklin, WI 53132

Forever Companies, Inc.
c/o Attorney Joseph Brydges
Michael Best
1 S Pinckney St Unit 700
Madison, WI 53703
(Via email: jdbrydges@michaelbest.com
and U.S. Mail)

Forever Companies, Inc.
c/o Corporate Agents, LLC
1712 Pioneer Avenue, Suite 100
Cheyenne, WY 82001

CTHD Company
P.O. Box 2576
Springfield, IL 62708

U.S. Small Business Administration
Birmingham Disaster Loan Servicing Cener
2 North 20th Street, Suite 320
Birmingham, AL 35203
SBA Loan #####7806
Lautrec Corporation

Mary K. Sirek

Subscribed and sworn to before
me this 22nd day of November, 2024.

Notary Public, State of Wisconsin
My Commission expires: 09/04/28

3

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

**EXHIBIT III TO AGREEMENT FOR PRIVATE DISPOSITION**

**TRANSFER STATEMENT**

BYLINE BANK (the "Transferor/Seller") and DIAMOND NEXUS LLC (the "Transferee/Purchaser") agree as follows:

**R E C I T A L S**

A.       This Transfer Statement is delivered by Transferor/Seller to Transferee/Purchaser pursuant to that certain Agreement for Private Disposition, dated as of April 4, 2025, by and between Transferor/Seller and Transferee/Purchaser (the "Agreement");

B.       Pursuant to the provisions of certain loan documents and security instruments (the "Loan Documents"), Transferor/Seller holds a security interest in and upon certain personal property described on **Exhibit A**, (collectively, the "Transferred Assets") of Forever Companies, Inc. f/k/a Lautrec Corporation (the "Debtor") to secure payment of the obligations of the Debtor to Transferor/ Seller under the Loan Documents;

C.       The Debtor has defaulted, and remains in default, of its obligations, which are secured by the Transferred Assets, to Transferor/Seller under the terms of the Loan Documents;

D.       The Debtor has agreed pursuant to a certain Voluntary Surrender Agreement, to voluntarily surrender the Transferred Assets to Transferor/Seller;

E.       Transferor/Seller has received an offer to purchase the Transferred Assets from Transferee/Purchaser, pursuant to the Agreement; and

F.       Transferor/Seller has exercised its post-default remedies with respect to the Transferred Assets and by reason of the exercise of the Transferor/Seller's post-default remedies and upon the execution of this Transfer Statement, Transferee/Purchaser shall acquire all of Debtor's and/or Transferor/Seller's rights to the Transferred Assets.

**AGREEMENT**

NOW THEREFORE, in consideration for the payment of the sum of Two Million and No/100 Dollars ($2,000,000.00) to Transferor/Seller from Transferee/Purchaser, the parties agree as follows:

1.       Capitalized terms not defined herein shall have the meanings assigned to them in the Agreement.

2.       Transferor/Seller hereby transfers to Transferee/Purchaser all of the right, title and interest of the Debtor in and to the Transferred Assets (as identified on **Exhibit A** attached hereto), as provided in Chapter 409 of the Wisconsin Statutes, effective 5:00 p.m. CST on April 4, 2025. Notwithstanding anything herein to the contrary, the Transferred Assets transferred to Purchaser hereunder shall not include the Excluded Assets as defined in the Agreement.

1

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

3.     The transfer of Transferred Assets by this Transfer Statement is made pursuant to Transferor/Seller's rights as a secured party to sell the Transferred Assets by private disposition for the repayment of indebtedness of the Debtor to Transferor/Seller under Wisconsin Statute Section 409.610.

4.     **The transfer of the Transferred Assets pursuant to this Transfer Statement is being made by the Transferor/Seller on an "AS IS AND WHERE IS" basis and without representation, recourse or warranty of any kind, express or implied, including but not limited to, the statutory warranties provided by Wisconsin Statutes Section 409.610(4), and any and all warranties as to the merchantability, validity, regularity, value, collectability, fitness for any purpose or use, condition, character, quality, durability, capability, suitability, ownership,  or otherwise regarding the Transferred Assets (whether known or unknown or latent or apparent) or that the description of the Transferred Assets is accurate, or whether there are or will be any outstanding charges or taxes due to any governmental entity against the Transferred Assets.**

5.     By acceptance of this Transfer Statement, Transferee/Purchaser acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by Transferor/Seller, or anyone acting on behalf of Transferor/Seller to Transferee/Purchaser regarding the subject of this Transfer Statement or the Transferred Assets being transferred which are not contained in this Transfer Statement.

6.     Except with regard to the application of the Purchase Price in partial reduction of the Debtor's obligations, this Transfer Statement and the transfer affected shall not serve to modify, release, or satisfy Transferor/Seller's rights against Debtor or any other third party.

7.     This Transfer Statement, and any amendments hereto, may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. The parties agree that signatures transmitted by electronic scan and email (including by way of DocuSign or other similar electronic signature exchange software or service) shall have the legal effect of original signatures. At the request of either party, the parties shall promptly exchange executed original counterparts of this Transfer Statement or any amendment hereto.

8.     This Transfer Statement and the Agreement are a fully integrated agreement as to the transfer of the Transferred Assets and there are no other agreements between the parties.

9.     The name and mailing address of the Transferor/Seller and the Transferee/Purchaser are as follows:

Transferor/Seller:          Byline Bank
                            Attn:  Christine Brauckhoff
                            10000 Innovation Drive, Suite 110
                            Wauwatosa, WI 53226

2

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

        Transferee/Purchaser:        Diamond Nexus LLC
                                            Attn: David Barr
                                            3535 Roswell Road, Suite 52
                                            Marietta, GA 30062

Dated this 4th day of April, 2025.

                                    BYLINE BANK

                                    By:_____*EXHIBIT ONLY*_____
                                    Christine Brauckhoff, Vice President and
                                    Loan Workout Officer

Diamond Nexus LLC the Transferee/Purchaser of the Transferred Assets, accepts the terms and conditions of this Transfer Statement, including that the Transferred Assets are transferred **AS IS, WHERE IS AND WITHOUT WARRANTY OR RECOURSE**. Transferee/Purchaser acknowledges receipt of this Transfer Statement this 4th day of April, 2025.

                                    DIAMOND NEXUS LLC

                                    By:_____*EXHIBIT ONLY*_____
                                    David Barr, Managing Member and
                                    Sole Shareholder

3

Docusign Envelope ID: 12E538F5-30C2-471F-8A49-002ED88400E1

## EXHIBIT A TO TRANSFER STATEMENT

All business assets of the Debtor, including, without limitation, inventory, intellectual property, goodwill, patents, trademarks, copyrights, other intellectual property, furniture, fixtures, equipment, computers, software, customer lists, customer orders, books and records, internet sites and domain names, telephone numbers, and intangibles of the above-referenced debtor, wherever located which are subject to Byline Bank's security agreements and liens.





## Certificate Of Completion

Envelope Id: 12E538F5-30C2-471F-8A49-002FD88400E1
Subject: Complete with Docusign: Agreement for Private Disposition.pdf, Transfer Statement - EXECUTION C...
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 21 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 3 | Initials: 0 | Christine Brauckhoff |
| AutoNav: Enabled | | 3639 N Broadway St |
| EnvelopeId Stamping: Enabled | | Chicago, IL  60613-4421 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | cbrauckhoff@bylinebank.com |
| | | IP Address: 52.162.139.161 |

Status: Completed

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Christine Brauckhoff | Location: DocuSign |
| 4/4/2025 7:54:02 AM | cbrauckhoff@bylinebank.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| David Barr<br>davidbarr@pmtd.com<br>Managing Member<br>Security Level: Email, Account Authentication (None), Authentication | DocuSigned by:<br>154190CA40E541D...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 72.185.78.112 | Sent: 4/4/2025 7:59:12 AM<br>Viewed: 4/4/2025 11:24:05 AM<br>Signed: 4/4/2025 11:24:37 AM<br>Freeform Signing |

**Authentication Details**
ID Check:
    Transaction: 31036381296315
    Result: passed
    Vendor ID: LexisNexis
    Type: iAuth
    Recipient Name Provided by: Recipient
    Information Provided for ID Check: Address, SSN9, SSN4, DOB
    Performed: 4/4/2025 11:23:52 AM

Question Details:
passed   property.city.real
passed   property.association.single.fake
passed   vehicle.historical.color.real
passed   vehicle.historical.color.real
passed   property.street.in.city.real
passed   vehicle.historical.association.real

**Electronic Record and Signature Disclosure:**
    Accepted: 4/4/2025 11:24:05 AM
    ID: df74844d-b81c-41c1-8651-56dc13d43f5a

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/4/2025 7:59:12 AM |
| Certified Delivered | Security Checked | 4/4/2025 11:24:05 AM |
| Signing Complete | Security Checked | 4/4/2025 11:24:37 AM |
| Completed | Security Checked | 4/4/2025 11:24:37 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |
| **Electronic Record and Signature Disclosure** | | |

Electronic Record and Signature Disclosure created on: 8/5/2020 4:05:32 PM
Parties agreed to: David Barr

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

Byline Bank offers delivery of certain Treasury Management documents to you in electronic form. Described below are the terms and conditions for providing such documents through the DocuSign system. Please read the information below carefully and thoroughly. If you can access this information electronically to your satisfaction and agree to receive and sign documents electronically, please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you

### How to contact Byline Bank:

If you have any questions, you may contact us as follows:

To contact us via email send messages to: cashmanagement@bylinebank.com

To Contact us via USPS, mail your request to:

Byline Bank
Attn: Treasury Management
180 North LaSalle 4th Floor
Chicago, IL 60601

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements